## App *v.* Lutheran Congregation..

A testator bequeathed as follows: "I give, devise, and bequeath to the Lutheran congregation in Selinsgrove, the sum of $400, which shall be and remain a capital or principal in the hands of the present vestry of said congregation and their successors for ever, to be put into bank-stock, or any other safe place, and the interest to be for the use of the said congregation for ever." At the time of this bequest, in 1815, there was but one Lutheran congregation in Selinsgrove; and of this congregation the testator was a member up to the time of his death, in 1815; and in the graveyard attached to the church thereof, he was buried. At the death of the testator, the vestry of the congregation received the bequest into their hands. The members of the congregation, worshipping in the church, of which they were the owners when the bequest was made, continued their organization and worshipped therein, until 1843, when a portion of the members became dissatisfied with the new doctrines and measures introduced into the church by their minister, and thereupon gave him notice that his services were no longer required, and finally closed the doors of the church against him. A majority of the vestry and members, who approved of the doctrines and measures of the ejected minister, left the old church, and, with others, who joined them, erected a new church building in Selinsgrove, which was organized for worship. That portion of the vestry and members of the congregation which continued to hold the old church building, invited a new pastor to the charge thereof, who was recognised as pastor of that congregation by the old Pennsylvania Synod of the Lutheran church, to which it was, and always had been, attached from its first organization. The congregation worshipping in the old church are attached to the old Pennsylvania Synod of the Lutheran Church, of which the West Pennsylvania Synod is a part; and the congregation worshipping in the new church, to the new East Pennsylvania Synod. These Synods do not recognise each other. Each of the congregations in Selinsgrove claim to be Lutheran; and also *the Lutheran congregation to which the legacy was given.* The fund bequeathed and paid over to the vestry, under the power given by the will to the vestry, was put out at interest, and the securities taken therefor, were placed in the hands of *the trustee* of the church, who handed over the same, together with .a small sum in cash, to his successor. *Held,* 1st, that the Lutheran congregation in Selinsgrove, holding and teaching the doctrines which were held and taught when the testator was a member of it, and when he made his will, was the congregation entitled to the bequest. 2d, That the new Lutheran congregation in Selinsgrove did not belong to the Lutheran church of which the testator, in his lifetime, was a member, because it was under a different church government, and held and taught different doctrines. 3d. That that portion of the old Lutheran congregation in Selinsgrove which continued to hold and worship in the old church, and which adhered to the government, forms of worship, and doctrines in practice, when the testator, in his lifetime, was a member of it, and when he made his will, was the congregation which was the object of the testator's bounty, and entitled to the legacy. 4th. That the plaintiffs below, in an action for money had and received, were entitled to recover such portions of the legacy as was in money in the hands of the defendant, the trustee; but that for the notes and other securities in the possession of the defendant, an action in another form must be brought.

In error from the Court of Common Pleas of Union county.

*July* 9.   This was an action on the case, for money had and received, brought by "the vestry of the United Lutheran and German Reformed Congregations of Selinsgrove," for the use of the Lutheran Congregation at Selinsgrove, against Leonard App, the plaintiff in error, and defendant below.

It appeared that, in 1802, the Lutheran and German Reformed congregations in the town of Selinsgrove, erected, at their joint expense, a church building, to be held and occupied by them in common.   Each of the denominations had their respective minister.   Neither of the congregations was an incorporated body until 1843, a short time before this suit was brought.  In 1815, when there was but one Lutheran congregation in Selinsgrove, Frederick Hawyer, a member of the congregation, by his will dated the 15th of May, 1815, made the following bequest: "I give, devise and bequeath to the Lutheran congregation in Selinsgrove, the sum of $400, which shall be and remain a capital, or principal, in the hands of the present vestry of said congregation, and their successors for ever, to be put in bank-stock, or any other safe place, and the interest to be for the use of said congregation for ever." To recover this legacy, this action was brought against John App, the trustee of the church.   At the death of the testator in 1815, the vestry of the congregation received the bequest into their hands.   No difficulty occurred in the management of this fund, until 1843.   The members of the congregation worshipping in the church of which they were the owners at the time of the bequest, continued their organization, and worshipped therein, until 1843, when a portion of the members became dissatisfied with the new measures and doctrines introduced into the church by the Rev. Mr. Shindle, their minister ; and they, thereupon, gave him notice that his services as minister of that church were no longer required, and finally closed the doors of the church against him.   A majority of the vestry and members, amongst whom was John App, the defendant, and trustee of the fund, who approved of the measures and doctrines of the Rev. Mr. Shindle, left the old church with him, and they, with others who joined them, erected a new church building in Selinsgrove, which, when finished, was organized for worship under the charge of Mr. Shindle.   That portion of the vestry and members of the congregation, which continued to hold possession of the old church building, invited the Rev. Mr. Ellenmyer to become their pastor, which he did in June, 1843.   On the 25th of September, 1845, the Rev. Mr. Ellenmyer was recognised as pastor of the con-

gregation, by the synod to which it was attached, and always had been attached, from its first organization as a congregation; and in the course of his ministerial labours in the old church, he installed officers in the place of those who went with, and continued with Mr. Shindle. In 1815, when Frederick Hawyer made his will, the Lutheran congregation of Selinsgrove was attached to the old Pennsylvania synod of the Lutheran church. In 1820, a general synod was formed, which had the supervision of the several synods composing it. After a few years, the old Pennsylvania synod withdrew from the General Synod, and became, as it had been before the organization of the General Synod, an independent body. The old Lutheran congregation of Selinsgrove still continued attached to the old Pennsylvania synod, and was always represented in that body. The old Pennsylvania synod, for purposes of convenience, was divided into the East and West Pennsylvania synods, and the Susquehanna river and West Branch constituted the dividing line. By this division the congregation of Selinsgrove was in the Western division. At a meeting of the old Pennsylvania synod, at Lancaster, in 1840, some of the clergymen composing it asked leave to detach themselves from it, and to form a new synod. This was not consented to, so far as they requested leave to form a new synod. Several of the members, however, who made the request, did then withdraw, and formed what is now called the new East Pennsylvania synod. Mr. Shindle, the pastor of the old congregation of Selinsgrove, continued a member of the old Pennsylvania synod, from 1819 up to the fall of 1843, when he attached himself to and became a member of the new East Pennsylvania synod, formed by those who withdrew in 1840, from the old Pennsylvania synod. The old Pennsylvania synod, of which the West Pennsylvania synod is a part, and the new East Pennsylvania synod do not recognise each other. Mr. Ellenmyer, the pastor of the congregation worshipping in the old church building in Selinsgrove, *is a member of the Western division of the old Pennsylvania synod;* and Mr. Shindle, the pastor of the congregation worshipping in the new church, is a member of the *new East Pennsylvania synod.* Each of these congregations claim to be Lutheran, and also to be the Lutheran congregation in Selinsgrove, to whom the bequest in the will of Frederick Hawyer was made. The money received under the bequest was put out at interest, and the notes and other securities taken therefor, were placed in the hands of one John Dietrich, who was a trustee of the Lutheran congregation of Selinsgrove. Leonard App, the defendant, succeeded Dietrich, and continued trustee until the

separation in 1843. It appeared that Dietrich handed over to App notes and securities to the amount of $393, together with a small amount of money.

Several bills of exception were taken by the defendant, to the admission and rejection of evidence, which, as they are not noticed in the opinion of this court, it is not necessary to notice them here.

The material facts of the charge of the court, WILSON, P. J., are as follows:

" The questions, as we conceive, presented by the testimony, are, 1st. Is the portion of the congregation organized, and worshipping in the old building, the Lutheran Congregation of Selinsgrove, intended by the testator, as the congregation whose vestry is to have and control this bequest? 2d. If they are, can they recover the amount of it from Leonard App, the defendant, who was the trustee of the congregation before the division, and into whose hands it passed, in the shape of securities from his predecessor? These questions are not without difficulty. The intention of the testator must in all cases be the governing principle with courts and juries, in giving direction to a trust fund, created by his will. Certainly the testator intended by his will, that the Lutheran congregation in Selinsgrove then organized and worshipping, and teaching the doctrines that it then held, was to be the object of his bounty. The Lutheran church in Selinsgrove, holding and teaching the doctrines that were held and taught when Frederick Hawyer was a member of it, and when he made his will, it cannot be questioned, is the congregation entitled to the fund. Which of the two Lutheran congregations now in Selinsgrove, since the original congregation have become dissatisfied among themselves, and divided into two congregations independent of each other, are, in doctrine, the Lutheran church as it was at the time of the bequest, I am not prepared to say. Nor will the opinion of those of the original congregation who differ, both claiming to be the true Lutheran church, settle the question of right to this bequest, although a majority may be of our opinion. For, if they are not of the doctrines taught in that church when the bequest was made, to say that they shall take it, would be diverting it from the use for which it was given by the donor. Then, in ascertaining this, the church as instituted at the time of the bequest, as well as the religious principles it held, and the church government to which it was subject, are to be looked into, in determining this question. Perhaps, if it were property that had been acquired by the disputants,

or their predecessors in this immediate congregation, by subscription or the like, it might follow the majority, or admit of a division. But where it is, as in this case, a bequest, the capital or principal of which is to remain in the hands of the vestry of the Lutheran church at Selinsgrove for ever, and the interest to be for the use of the congregation, the intention of the testator, and not the decision of the majority (when there is a division on the subject of the doctrines and government of the church) must prevail.

" What the difference in doctrine, if there is any between these two bodies so organized, we have not very well explained to us, and the rights of the parties claimant to this fund will depend on how you shall find either party situated in relation to the Lutheran church as it existed, not only in doctrine but in their form of government, and of worship at the time of the bequest. Then it is necessary you should look to the nature of the institution at the time of the bequest, and to the parties claimant as they are constituted at present. If the society worshipping in the new church are the same that they were in 1815, *in doctrine, government, and mode of worship*, and you find that they, by those remaining in the old building, were expelled or driven out of that building, they thus expelled, being a majority of the officers by which the congregation before the division were organized, could retain the fund in the hands of their vestry. But if they have changed in doctrine or government and mode of worship, whether they were expelled or not by those remaining in the old building, it would not be carrying out the intention of the testator to permit them to carry the fund with them to the new building, and those remaining in the old building, organizing anew, continuing to support the doctrines taught, and submitting to the form of government *and mode of worship* as it was at the time of the bequest, will be entitled to the fund. These questions are for you, and if you should find for the plaintiffs, then another question is presented. The will of F. Hawyer directs that the principal shall be and remain in the hands of their vestry and their successors, to be put into bank-stock or any other safe place, and the interest to be for the use of the said congregation for ever. This fund, under the power given by the will to the vestry, had been put out at interest, and the securities taken were in the hands of Mr. Dietrich, the trustee. He was succeeded as trustee by Leonard App, the defendant, into whose hands the securities were regularly handed over. Now, for what individually would he be liable to the congregation ?—Only for what he got into his hands, which would be the notes and the money re-

ceived by him from his predecessor, or received from the obligors in those securities. For the securities or notes handed over to him there can be no recovery in this action. A recovery can only be had for what he received in money from his predecessor, or realized out of the securities handed over to him, and not revested by the congregation entitled to it. The notes or securities must be recovered in another form of action. Dietrich says that he handed over in money or cash which he received as interest, including a small note of $11, about $23. This small note of $11 has not been accounted for by the defendant—it was not a part of the interest that had accrued on the legacy, but was funds of the congregation, and in the action for whatever funds of the congregation he received in cash, he would be liable for in this suit, provided, on the first ground we have referred to, you shall find for the plaintiffs. And in the same principle he would have to account for any interest he had received on the securities. To account for a portion of the securities he shows his own note for $95 95. This money he would be liable for if you find that the plaintiffs are entitled to the legacy. If the plaintiffs are entitled to the legacy, the vestry of their congregation would have a right to invest the money, and Leonard App could not, by producing his note for the money, prevent a recovery of the amount. You first determine which congregation is entitled to the legacy. If you find it is those worshipping in the new building you find for the defendant. If you determine this question in favour of those worshipping in the old building, then you ascertain the amount of money in the defendant's hands, and for that you find for the plaintiffs."

Plaintiff's points. 1. That the legacy of $400 given by Frederick Hawyer to the Lutheran congregation in Selinsgrove, belongs to the Lutheran congregation worshipping in the old Lutheran church, as it was the only Lutheran church in that place at the time the legacy was given.

Answer. No doubt the legacy was given by Frederick Hawyer to the Lutheran congregation worshipping in the old Lutheran church at the time of the bequest. It was then the only Lutheran congregation in Selinsgrove, and it could apply to none other. But when that congregation have divided, and if you should find that a part have been expelled from the old building, and continued their organization as they were organized when in the old building, by the other portion of the congregation, and have not changed, in doctrine or government, or changed the nature of the original institution to which the legacy was given, we do not say that the

legacy would not continue to belong to the portion of the congregation remaining and worshipping in the old building. But, if the portion leaving the old church, (although a majority of them were the officers of the congregation before the division,) voluntarily withdrew from worshipping in the old building when they might have remained in it, or changed their views in doctrine from what it was when the bequest was made, it would belong to the portion remaining in the old building, although they may be a minority.

3. That if the Rev. Mr. Shindle introduced new measures into the church, and on that account was notified to leave the church, or if even he was locked out, it gives that part of the congregation that went with him to the new church, no right to the legacy aforesaid, or any part of it.

Answer. The fact of Mr. Shindle being notified to leave his charge in the old building or any locking him out of it, on account of new measures, would not give that portion of the congregation that went with him to the new church a right to the legacy or a portion of it—their right must depend on other circumstances which have been referred to.

4. That the fact of old Frederick Hawyer being buried in the graveyard attached to the old church, is strong evidence that the legacy was intended for the Lutheran congregation worshipping in that church.

Answer. This fact is strong evidence that those who buried Frederick Hawyer in that churchyard, considered the bequest as given to the congregation worshipping in that building at the time; and no doubt Frederick Hawyer so intended and made the bequest, never contemplating the difficulty that has occurred between the members worshipping in that building, but that it is to be continued in the hands of the present organized congregation worshipping in that building, must depend on how you shall find the facts, applicable to the principles we refer to in our general charge.

Defendant's Points. 3. That if the jury believe Leonard App was the trustee of the Lutheran congregation of Selinsgrove, at the time of the separation, he is the legitimate successor of John Dietrich, and as such has a right to hold any notes or securities for money handed over to him by said Dietrich, or to hold any notes or securities taken in the place of any he received from said Dietrich, and plaintiffs cannot recover in this form of action, either principal or interest.

Answer. If you believe that Leonard App was the trustee of

the Lutheran congregation at Selinsgrove at the time of the separation, (and of this we think there is no question,) he is the legitimate successor of John Dietrich; but whether as such he has a right to hold any notes or securities for money handed to him by said Dietrich, or to hold any securities or notes taken in place of any he received from said Dietrich, and that the plaintiffs cannot recover either principal or interest, must depend on other considerations than the simple fact that he succeeded John Dietrich as trustee, which I have noticed in our general charge.

5. That the erection of another place of worship in Selinsgrove, by the so-called new Lutherans, under the circumstances detailed in the evidence, did not change their denominational character, and that the jury are to determine the rights of the parties, by the facts as they existed at the time of the separation, and not by acts subsequent.

Answer. We do not think that the erection of another place of worship in Selinsgrove by the so-called new Lutherans, under the circumstances detailed, would change their denominational character, but we do not say that the facts as they existed at the time of the separation are to determine the rights of the parties—their acts, subsequent and previous to the bringing of this suit, are also to be considered in determining the rights of the parties.

7. That for any errors in doctrine or practice, the Rev. J. P. Shindle was answerable to the synod to which he belonged, and the proceedings by which he was prevented from officiating in the old Lutheran place of worship, were irregular and void.

Answer. The Rev. J. P. Shindle, by the discipline of the Lutheran church, for errors in doctrine or practice, would be answerable to the synod to which he belonged, and the proceedings by which he was prevented from officiating in the old Lutheran church, would appear to be irregular and void.

8. That although the expelled minister, and members who officiated and worshipped in the old building, might have maintained an action against the aggressors for the injury done to them, the defendant is not precluded from showing in this action, that plaintiffs have no right to recover.

Answer. This is so, but in answering it affirmatively, we do not assume as matter of fact that the members who officiated and worshipped with the minister in the old building were expelled with the minister. The principal objection appears to have been to Mr. Shindle. Whether these members were expelled with him is a question of fact with you; but admitting that they were, and that

although they might have had an action for the injury done them if they were injured, the defendant is not precluded from showing that the plaintiffs have no right to recover.

The defendant excepted to the charge of the court. The jury found a verdict for the plaintiffs.

Errors. 1. The court erred in charging the jury, that the rights of the parties to the fund will depend on how you shall find either party situated in relation to the Lutheran congregation, as it existed not only in doctrine, but in their form of government and worship, at the time of the bequest.

2. That a change in mode of worship would entitle the plaintiffs to recover.

3. In answering the 1st, 3d, and 4th points of plaintiffs, and the 3d, 5th, 7th and 8th of defendant's points.

*Jordan*, for plaintiff in error.

*Miller*, contrà.

*July* 15. BURNSIDE, J.—The course of decisions has been uniform, that the intention of the testator must govern the construction of all wills. The intention is to be collected from the words of the will. The true mind of the testator is to govern: 3 Yeates, 190. Frederick Hawyer was a worshipper and member of the old Lutheran and German Reformed congregation of Selinsgrove. The church had been erected in 1802, at their joint expense, and was held and occupied in common. On the 15th of May, 1815, Frederick Hawyer made and executed his last will and testament, and made the following bequest: "I give, devise, and bequeath to the Lutheran congregation in Selinsgrove, the sum of $400, which shall be and remain a capital, or principal, in the hands of the present vestry in said congregation, and their successors for ever, to be put into bank-stock, or any other safe place; and the interest to be for the use of the said congregation for ever." There was then but one Lutheran congregation worshipping in Selinsgrove. In the graveyard of that church, the mortal remains of old Frederick Hawyer were interred. The devise was to the Lutheran congregation that existed at Selinsgrove, in 1815, and to their successors for ever. The vestry of that church, and their successors, were the trustees of the devise, and were to hold the principal upon the special trust and confidence mentioned and declared in the last will and testament of Frederick Hawyer. Harmony prevailed in the church until 1843, when the members of this

church, following the example of nearly all the Christian churches in the Commonwealth, discovered new doctrines, and new modes to worship their Maker. This brought forth division, heart-burning, and separation. The minister, who had produced the discord, had the door closed against him, and the majority of the vestry and members fled from the old church, and built one of their own; and they now want to strip the old church, and take from it the gift that its old member had bestowed upon it, and to deprive it of its earthly comforts. The new church does not belong to the old Lutheran church. It is attached to a new synod, and is not governed by the same ecclesiastical government that ruled Frederick Hawyer in his lifetime. I approve of the doctrine of Lord Eldon, in the case of The Attorney-general v. Pearson, 3 Merivale, 400, that it is the duty of the court to decide in favour of those, whether a minority or a majority of the congregation, who are adhering to the doctrine professed by the congregation, and the form of worship in practice, as also in favour of the government of the church in operation, with which it was connected at the time the trust was declared. The plaintiff in error, who was treasurer of the old church, went with the new. He has ceased to be an officer of the church to which Hawyer made the devise, and the judge was right in instructing the jury, that the plaintiff could recover any part of the legacy in his hands when the suit was instituted.

Judgment affirmed.