## Clarion Baptist Association's Charter.

*Corporations—Charter—Name—Church law.*

Where an unincorporated association of congregations of the Baptist denomination known as the "Clarion Baptist Association" by the unauthorized action of the majority excluded a minority of the members of the association because the latter refused to conform to a departure from the ecclesiastical usages, customs and principles of the association, such minority may organize and obtain a charter as a corporation of the first class under the name of "The Clarion Baptist Association."

Application for charter. C. P. Clarion Co., Dec. T., 1927, No. 53.

*Corbett & Hugh* and *M. H. Davis,* for petitioners.

*Rev. John J. Van Gorder* and *Rev. H. W. Jones,* for protestants.

HARVEY, P. J., Dec. 22, 1927.—A petition for a charter of the first class under the Act of Assembly of Pennsylvania, approved April 29, 1874, P. L. 73, and the supplements thereto, was filed in this court Sept. 27, 1927, for the incorporation of a proposed corporation to be known as the Clarion Baptist Association. Hearing thereon set for Saturday, Oct. 15, 1927, at 10 o'clock A. M. On request of attorney representing persons desiring to be heard in protest to incorporation, hearing continued. Protest to the granting of decree for such incorporation filed Oct. 24, 1927. Hearing fixed for Thursday, Nov. 17, 1927, at 2 o'clock P. M. Answer to protest filed Nov. 10, 1927.

Hearing held at time appointed. Petitioners represented by Don. C. Corbett, Esq., and M. H. Davis, Esq., and protestants by Rev. John Van Gorder, of Butler, Pa., and Rev. H. W. Jones, of Grove City, Pa.

Petition presented, accompanied by proofs of the publications of notice of application, and certificate from the office of the Secretary of the Commonwealth that a search of the records of the office fails to disclose any conflict between aforesaid title (The Clarion Baptist Association) and any other name, title or designation heretofore requested under the provisions of the Act of May 16, 1923, P. L. 246. Petition perused and examined and found to be in proper form and within the purposes named in charter of the first class under Act of April 29, 1874, and the supplements thereto.

Protest against granting the charter prayed is, in substance, as follows: That on or about A. D. 1837, twenty-one Baptist Churches in Western Pennsylvania organized an association styled "Clarion Baptist Association," which association is functioning with the same objects and purposes as those of the proposed incorporation. That the granting of a charter is an infringement upon their rights.

This protest is signed by the pastors of the following-named Baptist Churches, averred members of the Clarion Baptist Association aforesaid, namely: First Baptist Church of Butler, by John J. Van Gorder, pastor; First Baptist Church of Grove City, by Harvey J. Jones, pastor; Calvary Temple Baptist Church of Pittsburgh, Pa., by Charles Embrey, pastor; Oakland, Deanville and Leatherwood Churches, by James M. McKinley; Limestone, Corsica and Zion Churches, by C. C. Clawson; Union Baptist Church, by L. S. Hoyle, pastor.

Answer to protest filed, in substance, as follows: Organization of an unincorporated association called the "Clarion Baptist Association" about A. D. 1837, and [this association] has existed as such to the present·date, not denied.

That the granting of a charter as applied for is an infringement upon the rights of said association is denied. In support of said denial, petitioners

aver: (1) The Clarion Baptist Association, at its 90th annual meeting at Richardsville, Pa., Sept. 6-7, 1927, resolved to apply for a charter of incorporation as a corporation of the first class, to be called the "Clarion Baptist Association," and appointed certain persons to make application for such charter. (2) The organization applying for the charter is the "Clarion Baptist Association," adherent to the doctrines, principles and teachings of the Baptist Church, and is recognized as such by the Pennsylvania Baptist General Convention. (3) The protestants do not represent the "Clarion Baptist Association," but are seceders therefrom, and do not adhere to the doctrines of the Baptist Church, and have no standing to file the protest in this case.

The application is in due form. The purpose and object is lawful. The questions to be resolved are:

1. Are the churches as represented by the petitioners the true "Clarion Baptist Association" by reason of their steadfast adherence to the doctrines, principles and rules of the regular Baptist faith, working in accord with the united and general work and benevolences of the regular Baptist Churches at home and abroad?

2. Are the churches as represented by the protestants averred representing a majority of the churches constituting the Clarion Baptist Association as of Sept. 7-9, 1926, by reason of action taken at the meeting held Sept. 7-9, 1926, the true "Clarion Baptist Association," and the use of the name "The Clarion Baptist Association" by the petitioners an invasion of the rights of protestants to the exclusive use of that name?

3. Will the granting of the charter applied for be "not injurious to the community" (a provision in the Act of April 18, 1927).

Great latitude was allowed in the examination of persons at the hearing on this matter for the purpose of arriving at a knowledge of the status and the rights of the respective parties under the civil law, for it is by and under the civil law this matter shall be adjudged.

From the evidence before us, we find as facts the following:

1. Each individual church of the Baptist denomination is supreme in the control of its own affairs, its powers in that respect being limited only by the Constitution and laws of the land. There is no organized body of the Baptist denomination having the power of dictation to the individual church.

2. That there is an unincorporated association known as the Clarion Baptist Association, constituted of Baptist Churches located in Clarion, Butler, Jefferson, Armstrong and adjacent counties, and has been in existence about ninety years past. That originally the association was composed of twenty-one Baptist Churches located within the district named.

3. That at the annual meeting of the association, held in 1925, certain resolutions were introduced to be presented for adoption at the next annual meeting as part of the constitution. Resolution No. 6 being, in section 1, a creed, a statement of belief or confession of faith. Section 2. "That the association refuse to fellowship into its meetings churches or pastors who refuse to subscribe to this confession of faith." That this resolution was presented and adopted at the annual meeting of the association held Sept. 7-9, 1926, at Corsica, Pennsylvania.

4. That at least four of the churches constituting the association refused to subscribe to Resolution No. 6.

5. That at the next annual meeting convened at Richardsville, Pennsylvania, at an afternoon session held Tuesday, Sept. 6, 1927, the delegates, or messengers, as denominated in the Baptist Church, from the churches refus-

ing to subscribe to Resolution No. 6 were refused fellowship in the meeting; the program changed, and the delegates or messengers denied the right to vote. The program, as prepared, after changes removing pastors who refused to subscribe to Resolution No. 6, appointed to preach certain sermons, and others substituted, was proceeded with. Business transacted. Election of officers for the ensuing year. By motion, duly carried, only those who had subscribed to article xv of the constitution, including both sections 1 and 2, were declared entitled to and permitted to vote. On motion, the moderator declared the session adjourned to meet at some other place on the call of the moderator. That subsequently, on the same day, in the evening, the delegates, or messengers, from the churches refusing to subscribe to Resolution No. 6, and denied fellowship and the right to vote at the afternoon session, convened a meeting at the same place (continued the following day). The clerk of the association, elected at the regular annual meeting in 1926, was present and called the meeting to order, and, after organization, the program was proceeded with, the election of officers and the transaction of business. At this meeting, at the session held Wednesday, Sept. 7, 1927, was passed the resolution appointing a committee to make application for the incorporation of the Clarion Baptist Association in these proceedings being considered.

## Discussion.

It is not for us to enter the realm of doctrinal controversy or church administrative regulations. It has no place in these proceedings except as cause, or rocks, upon which the membership of churches constituting the Clarion Baptist Association as of Sept. 7-9, 1926, threatens to split. The association through its existence of nearly ninety years seems to have moved along "in the even tenor of its way" until two or more years ago, when a disturbing element or factor was introduced. Upon the merits of that factor, we do not presume to pass.

Upon the organization of the original association, each member church undoubtedly subscribed to the faiths, beliefs, rules, regulations and practices set forth in its constitution and by-laws. Probably, through the years, some of the original member churches may have disbanded or dropped out of the association and new ones were added. The constitution may have been amended and the by-laws altered. In any event, prior to the meeting of Sept. 7-9, 1926, the association was a united body with established constitution and by-laws. An examination of the constitution as of that date reveals:

(Article III) That articles of faith satisfactory to the body are essential for *admission* to membership in the association.

(Article IV) It (the association) disclaims all authority over churches or individuals.

(Article V) Each church shall send to each annual meeting letters "containing a declaration of their continuance in the faith," etc.

(Article XIV) The association shall have power to make any necessary alterations or additions by making known the desired change one year previous to its being voted for.

Nowhere can we find any specific provision for the expulsion of a member church. Doubtless, in case of notorious un-Christian and un-Baptistic practices or beliefs, measures would be found to that end, but even then conclusive grounds would have to be shown if demanded.

In this case, we must assume that the four or more churches refusing to sign Resolution No. 6 were admitted into fellowship at the meeting of Sept. 7-9, 1926, on their letter containing a declaration of their "continuance

in the faith" under article V of the constitution. That, immediately upon their refusal to sign or subscribe to Resolution No. 6, they were automatically deprived of their membership, rights and privileges in the association. Why? Did they repudiate the "principles of the constitution" then in existence—article II? Was there any change or changes in the Articles of Faith? Was it in resistance to domination disclaimed in article IV of the constitution? Or was it a combination of all?

Articles of Faith satisfactory to the body are essential for *admission* to membership in the association. We must conclude that those already members of the association possessed and possess qualifications, including Articles of Faith, entitling them to membership. If one church, or one pastor, should adopt and persistently maintain religious opinions contrary to the accepted standards or doctrines, principles and rules of the general Baptist denomination, it cannot be gainsaid means would be found to expel it or him from the regular Baptist communion. A coalition of several churches under similar conditions would not alter the principle involved. That, however, does not enter this issue except as it may affect the terms of the original agreement or contract of the Clarion Baptist Association. Even then it might have remained for an ecclesiastical court of the Baptist denomination to determine the doctrinal points had not the law governing the agreement of the original association been breached by action of a majority, making void the acts of the majority at meetings subsequent to Sept. 7-9, 1926, from which minority delegates, or messengers, were excluded.

Under the democratic form of government existing in the Baptist denomination, while each church is supreme in the control of its own affairs, in the original Articles of Association of the Clarion Association, a contract was entered into binding upon its members.

Article XIV of its constitution is vague in many ways, but of one thing we may be certain—no *ex post facto* law or provision may be passed by a party to a contract, however greatly in majority, abrogating or depriving a minority without its consent of its rights fixed by the contract.

While progess in the world, even in religious matters, should not be restricted unduly, yet there are certain fundamental principles and established rights to which people cling and in which they are guaranteed by our national constitution, among them the right to worship God according to the dictates of each person's own conscience. We, therefore, feel that the principle enunciated in McGinnis *v.* Watson, 41 Pa. 9, is applicable in this case, namely, "the ecclesiastical laws, usages, customs and principles which were accepted among them (in this case just prior to Sept. 7-9, 1926, among the churches and regulating the association) before the dispute began, are the standard for determining which party is right," and that the association exceeded its powers in adopting Resolution No. 6, incorporating article XV into the constitution as noted in minutes of the meeting of the 89th annual session of the Clarion Baptist Association, held in the Mt. Pleasant Church, Corsica, Penna., Sept. 7-9, 1926, under and by which certain churches were arbitrarily excommunicated and deprived of their rights, power and privileges as members in the Clarion Baptist Association, the effect of which was exhibited at the annual meeting held at Richardsville, Penna., Sept. 6, 1927, afternoon session, at which non-subscribing pastors and churches refusing to sign Resolution No. 6 were denied the right to fellowship in the program prepared and to vote on questions arising. It is true that a majority of delegates, or messengers, representing a majority of the churches composing the Clarion Baptist Association voted for Resolution No. 6 of the session of Sept. 7-9,

1926, and at the afternoon session of Sept. 6, 1927, at Richardsville, but majorities, be it in matters ecclesiastical or temporal, must follow established laws and practices, and minorities possess rights that must be recognized. The denial of the right to vote to accredited delegates, or messengers, of churches already members in good standing in the association, under the circumstances and state of facts here presented, was an assumption of power not possessed by a portion of the membership, however great the majority.

We find and hold the Clarion Baptist Association to be of those churches and pastors who hold fast to the faiths and beliefs of the fathers and adhere to the principles and doctrines of the regular Baptist denomination. That the petitioners are representatives of the association under authorization at the Richardsville meeting of Sept. 6-7, 1927, and that the action is but the incorporation of that which is now unincorporated, and the use of the name is no invasion or infringement upon any rights of the protestants.

We are of the opinion, upon consideration of all the evidence, that the action of the majority at the Richardsville meeting at the session held on the afternoon of Sept. 6, 1927, in arbitrarily excluding accredited delegates, or messengers, because of the refusal of the churches they represented to subscribe to Resolution No. 6 of the meeting of Sept. 7-9, 1926, from fellowship, taking part in the program authoritatively prepared, and from voting on matters arising, was improper, irregular and illegal and contrary to article IV of the constitution; and that, upon the withdrawal of delegates from the meeting before the completion of the program officially prepared, the remaining delegates, or messengers, were fully warranted in reorganizing the meeting, as they did, to continue and conclude the program as officially prepared and transact business properly brought before such meeting. In this opinion, as to the rights of majorities and minorities, we are supported in principle by Winebrenner v. Colder, 43 Pa. 244, and cases therein cited; Kerr v. Trego, 47 Pa. 292; App v. Lutheran Congregation, 6 Pa. 201. Also, Barton's Rules of Order for Religious Assemblies, pages 92-93, 118-120; Robert's Rules of Order, Revised, § 47, page 201, § 74; Action of Pennsylvania Baptist General Convention held in Philadelphia, Oct. 20, 1927. We are not required to pass upon the constitutionality of article XV, incorporated in the constitution, set out in minutes of meeting of Sept. 7-9, 1926, raised at the hearing.

As to granting the charter "not being injurious to the community," as specified in the Act of April 18, 1927. We must assume that the "community" in this case comprises the district in which the rights and powers under the charter are effective.

Careful examination of the application fails to reveal any means in the proposed corporation whereby the faith and beliefs of the membership or doctrines and principles of the Baptist Church may be affected or the right of self-government taken from the several churches constituting an incorporated association. We do, however, call attention to the expression in the application for charter "according to the constitution," etc., of said corporation. A charter is the "constitution" of a corporation. By-laws not inconsistent with the purpose and object contained in the application upon which a charter is granted, and not otherwise, may by proper procedure be passed. Incorporation for special purposes seems not adverse to usage in the Baptist denomination: Hiscox's New Directory for Baptist Churches, page 338, note No. 5. In other religious denominations it is recommended and encouraged. It affords an entity in which titles, trusts, endowments and funds for

general associational objects may be vested and the same administered under powers possessed under the laws.

And now, Dec. 22, 1927, after perusing and examining the application for a charter for The Clarion Baptist Association, filed in this court Sept. 27, 1927, accompanied by proof of the publication of the notice of such application, and finding the same in proper form (the word "constitution," line third from bottom of page 2 of application, to be eliminated) and within the purposes named in charter of the first class under the law in Pennsylvania, and after hearing the protest filed against granting the said charter, the evidence presented and the arguments of parties at the hearing thereon, after careful consideration, for the reasons contained in foregoing opinion, we find the application lawful and the object and purpose not injurious to the community. Let an order and decree thereon that the charter be approved be drawn accordingly.