Kenesaw Free Baptist Church v. Lattimer.

---

KENESAW FREE BAPTIST CHURCH, APPELLEE, V. G. S. LATTIMER ET AL., APPELLANTS.

FILED SEPTEMBER 27, 1919.   No. 20524.

1. **Religious Societies: GOVERNMENT: CONTROL OF PROPERTY.** When a church, strictly *congregational* or *independent* in its organization, is governed solely within itself, either by a majority of its membership or by such other local organism as it may have instituted for the purpose of ecclesiastical government, and holds property either by way of purchase or donation, with no other specific trust attached to it than that it is for the use of that church,

the numerical majority of the membership of the church may ordinarily control the right to the use and title of its property.

2. ———: ———: ———. Such local church may sever its ecclesiastical connection and still be entitled to control the temporalities of the church, where such change does not involve any diversion of the property from the original trust. In such case the civil courts will only inquire as to who constitute the religious society and its legitimate successors, and award to them the use of the property, and will not ordinarily, in case of a schism in the organization, inquire into the existing religious opinion of those who adhere to the original local organization.

Appeal from the district court for Adams county: William C. Dorsey, Judge. *Affirmed.*

*Hugh La Master,* for appellants.

*C. C. Flansburg,* contra.

Cornish, J.

Appeal by defendants from a decree quieting title in the plaintiff to certain church property held by them as trustees, and enjoining them from interference therewith.

In 1883, 1884, when funds were raised and the church building erected, the Freewill Baptist denomination at Kenesaw was an independent governing body, owing no obedience to any higher authority. Quarterly meetings, composed of delegates from two or more local churches, could admonish a church when, in its opinion, it became an alien to the faith and practices of the denomination. It could determine whether the church was worthy of its fellowship or not. A local church, being independent, had the right to withdraw from the quarterly meeting and to join another evangelical denomination. This body would send delegates to the yearly meeting, which body sustained about the same relation to the quarterly meeting that the quarterly meeting did to the local church. Still higher was the general conference, a national organization, which aimed to consolidate the body, harmonize its different parts, and produce unity of

sentiment and discipline.   Its powers, too, were only admonitory.

In the nine articles of the constitution of the local church it was provided that its trustees should provide for purchasing, selling, insuring, and caring for its property, and, amongst others, a provision as follows: "Other matters shall come under the rulings of general conference." In October, 1883, the general conference appropriated $200 for erecting a house of worship at Kenesaw. The remainder of the $1,503.18, required to erect the church, was pledged without condition for the building of the church by local contributions of the citizens of Kenesaw before the church was organized. At the time of the completion of the church $400 was owing, which the church assumed and paid.

At this time one Rev. A. D. Williams acted as church clerk, was its first pastor, and the active person in procuring the church fund. He was also chairman and one of the five members of the executive committee of the Nebraska Yearly Meeting, a corporation, to whom the property was deeded "in trust for the Freewill Baptist Church of Kenesaw, Nebraska." This executive committee was created "to be a board of missions and church extension, to secure, hold, use and convey funds, in money, houses or lands, for the propagation of the gospel," etc. It was named a "System of Co-operation," organized in part to hold title in trust "for the churches or purposes for which it was secured," in cases where it had afforded aid. It would seem that the fund raised was pledged before the creation of this executive committee and co-operative system, but from the time Mr. Williams became its chairman, January 21, 1884, the committee, through him, may be said to have given aid in the construction of the building. Later the congregation built and paid for a parsonage upon the church grounds.

Years afterwards, by concerted action of the national organizations of the Freewill and Missionary Baptists,

it was determined that there was no such difference in their denominations as to require their continued separation, and a basis of union was agreed upon and approved by the general conference of Freewill Baptists. Twenty-eight constituent bodies of the general conference, representing 44,481 members, approved, and five bodies, representing 1,721, disapproved of the basis of union. Among those disapproving was the Nebraska Yearly Meeting. The plaintiff church, however, approved of the action taken. Afterwards the Nebraska Yearly Meeting organized another general conference, and in 1915 refused recognition of delegates from the plaintiff church, on the grounds that it had taken itself out of the denomination. It also refused to deed the church property to the plaintiff, and would seem to claim the right, if in its judgment it seems proper, to hold the property for the uses of another congregation, conforming to the present views of the Nebraska Yearly Meeting. It should be added that the plaintiff represents every member of the present congregation at Kenesaw, so that what might be considered as the individual right of a member of the church is not involved.

The question is whether the members of the local church, as an independent body, can control the right to the use and title of the church property, in spite of the fact that the system of co-operation governing the executive committee provides that it shall be the judge whether the church has taken itself out of the denomination, or has become extinct, and when and in what way the property shall be disposed of for the purposes for which it was secured.

Disputes of this character have been classified as follows: First, cases where the property has been by the deed or will of the donor, or other instrument, by which the property is held, by the express terms of the instrument devoted to the teaching, support or spread of some specific form of religious doctrine or belief; second, cases where the property is held by a religious con-

gregation, which, by the nature of its organization, is strictly independent of other ecclesiastical associations, and, so far as church government is concerned, owes no fealty or obligation to any higher authority; third, cases where the religious congregation or ecclesiastical body holding the property is but a subordinate member of some general church organization in which there are superior ecclesiastical tribunals, with a general and ultimate power of control, more or less complete, in some supreme judicatory over the whole membership of that general organization. It will be remembered that the trust created in the deed in controversy was "for the Freewill Baptist Church of Kenesaw, Nebraska."

No doubt individuals may dedicate their property for the propagation of a definite religious doctrine or belief, so long as it violates no law or morality, in which case the property cannot be diverted from its special purpose. When, however, as in the instant case, property is given to a church which is a strictly congregational or independent organization, governed solely within itself, with no specific trust attached other than that it is given for church purposes, the case is different. In such case the ordinary contributor to a particular church regards it as a living organism, subject to change and growth. He would not attach conditions to the contrary if he could. So long as it continues by regular succession, retaining its identity as the church to which the donation was made, he will not complain, even though there are changes of doctrine or method which do not amount to an abandonment of the original purpose. This was the attitude of the yearly meeting. It has thought itself free not to follow the action of the general conference.

The defendants contend that differences exist between the old organization and the union, touching freedom of the will, general atonement, open communion, and perseverance of the saints. We will not go into a discussion concerning the extent of these differences. We

do not believe that they are of such a character as to show an intention, on the part of the governing body of the local church, to violate its implied trust and abandon the purposes for which the church was organized. We do not believe that the local church, in following the recommendations of the general conference, have acted outside of their own rights or violated any of the rights of the executive committee. No member of the local congregation complains. The general rule appears to be that, when a majority section of the church, independent in government, voluntarily followed the action of the general conference, which resulted in severing its connection with the yearly meeting, it did not thereby lose its identity, and is entitled to control the temporalities of the church, such change not involving any diversion of the property from the original trust.

We are of opinion that the congregation of the Kenesaw Freewill Baptist Church are entitled to have their property in the hands of those who are in accord with their purposes, and who do not deny them the right to take the step which they have taken in their church affiliations.

Error is assigned that plaintiff failed to prove its corporate character, and that such failure must defeat its action. We are of opinion that under the circumstances of this case the plaintiff was not required to either plead or prove its corporate character.

For cases bearing upon questions discussed, see *Mack v. Kime*, 129 Ga. 1, 24 L. R. A. n. s. 675; *Watson v. Jones*, 80 U. S. 679; *Brown v. Clark*, 102 Tex. 323, 24 L. R. A. n. s. 670; *Schradi v. Dornfeld*, 52 Minn. 465; *Parish of the Immaculate Conception v. Murphy*, 89 Neb. 524; *Pounder v. Ashe*, 44 Neb. 672; *Smith v. Pedigo*, 145 Ind. 361, 19 L. R. A. 433; *Exchange Nat. Bank v. Capps*, 32 Neb. 242.

The judgment of the district court is

AFFIRMED.

LETTON, J., not sitting.