W. G. DIX ET AL. v. R. H. PRUITT ET AL.

(Filed 10 June, 1927.)

**1. Religious Societies—Rules—Government.**

Where, upon sufficient evidence, the jury finds that the rule of the Primitive Baptist Churches that when a member has been excluded from one church he cannot unite with another of the same faith without first being restored by the church of which he had been a member, is a funda- mental rule and usage of all churches of that faith, the observance of this rule is mandatory on all congregations adhering to the Primitive Baptist faith.

**2. Same—Control of Property.**

The authority of a local Primitive Baptist church is limited by the fundamental rules, doctrines, and usages of the denomination to which it belongs, and when a group in a local congregation act in opposition to such rules, doctrines, and usages, though they are in the majority, they *ipso facto* withdraw from the lawful organization of the church and forfeit the control and use of the church property to the group which abides by the fundamental rules, doctrines, and usages.

CIVIL ACTION, before *Lane, J.,* at February Term, 1926, of ROCK-INGHAM.

This was an action brought by plaintiffs for possession and control of the church property of Dan River Primitive Baptist Church, and to restrain the defendants from interfering with the use and control of said church. The pertinent facts are contained in *Dix v. Pruitt,* 192 N. C., 829, and are as follows:

"The Dan River Primitive Baptist Church was organized in Ruffin Township, Rockingham County, in 1884, and in 1900 it bought land and a church building and had the conveyance made to R. H. Pruitt and W. G. Dix, as trustees. This church was governed by the rules, customs, and usages of the regularly constituted Primitive Baptist denomination, some of which were written and some unwritten. One of the usages is that when a member has been excluded from one church he cannot unite with another of the same faith without first being restored by the church of which he had been a member, and the church that expelled him must withdraw fellowship. from any other Primitive Baptist Church that receives him in disregard of the usage. In 1920, J. R. Wilson was called by the Dan River Primitive Baptist Church as its pastor. He had theretofore been a member of the Danville Primitive Baptist Church, and had been excluded from its membership. At the time he was called by the Dan River Church, he was not a member of either of these churches. It is alleged that his credentials had been canceled, and that he was no longer qualified under the usages of the churches to serve

in the capacity of pastor.   At a meeting of the Dan River Church, held in September, 1923, objection was made to Wilson as pastor, but it was contended that a majority of those present voted to retain him, and he has since continuously held possession of the church property, to the exclusion of the plaintiffs. On 9 October, 1923, the plaintiffs 'declared nonfellowship' with the defendants and those united with them in interest.   In the Dan River Church there are two factions, one seeking to exclude the other, and to recover the church property, and the other retaining possession and denying the plaintiffs' right to recover.

"Issues were submitted and answered as follows:

"1. Were the plaintiffs, and those united with them, the sole and only members of the Dan River Primitive Baptist Church on 9 October, 1923?   Answer: 'Yes.'

"2. Are the plaintiffs, and those united in interest with them, entitled to the possession of the Dan River Primitive Baptist Church and its records, as alleged in the complaint?   Answer: 'Yes.'

"The verdict was set aside as a matter of law."

Upon the former appeal, this Court reversed the judgment of Lane, J., which set aside the verdict as a matter of law for the reason set forth in the opinion.   Thereupon, at the February Term, 1927, the parties appeared before Judge Harding at the regular term of Rockingham Superior Court, who entered the following judgment:

"This cause coming on to be heard, and it appearing to the court that it was heard before a judge and jury at the February Term, 1926, of Rockingham Superior Court, and that the jury answered the issues submitted to them as follows:

"1. Were the plaintiffs, and those united with them, the sole and only members of the Dan River Primitive Baptist Church on 9 October, 1923?   Answer: 'Yes.'

"2. Were the plaintiffs, and those united in interest with them, entitled to the possession of the Dan River Primitive Baptist Church and its records, as alleged in the complaint?   Answer: 'Yes.'

"And it further appearing to the court that upon the coming in of the verdict of the jury, his Honor, Judge Lane, set aside the verdict as a matter of law; that the plaintiffs appealed to the Supreme Court, and that judgment was rendered in the Supreme Court that there was error in that his Honor set aside the said verdict as a matter of law, and judgment has never been entered upon the verdict of the jury appearing of record.

"It is, therefore, upon motion, ordered, adjudged, and decreed that the plaintiffs, and those united with them, were the sole and only members of the Dan River Primitive Baptist Church on 9 October, 1923. It is further ordered, adjudged, and decreed that the plaintiffs, and those united

in interest with them, are entitled to the possession of the Dan River Primitive Baptist Church and its records, the said Dan River Primitive Baptist Church consisting of the real estate described in the deed recorded in the office of the register of deeds of Rockingham County, North Carolina, in Book 128, page 97, as well as the buildings thereon, and in addition thereto, plaintiffs are entitled to the possession of all records, books, and papers of said Dan River Primitive Baptist Church now in the hands of the defendants;

"And it is ordered, adjudged, and decreed that the defendants, and those united with them, immediately surrender to the possession of the plaintiffs, and those united in interest with them, the said real estate, and the Dan River Primitive Baptist Church and its records, to the end that said real estate, church property, and records may be used for church purposes in accordance with the rules, customs, usages and faith of the Primitive Baptist Churches, and the defendants, and all persons, are now and forever enjoined from interfering with the plaintiffs, and those united in interest with them, in the use and control of the church property aforesaid, and the records thereof, and are forever enjoined from preventing the plaintiffs, and those united in interest with them, from using said real estate and the church for public worship and for church purposes, in accordance with the rules, customs, usages, and faith of Primitive Baptist Churches.

"It is further ordered that the clerk of this court, in the event the defendants fail to surrender possession as aforesaid to the plaintiffs, issue a writ of assistance directed to the sheriff of Rockingham County, directing said sheriff to take over and give to the plaintiffs the possession of said real estate, church, and records aforesaid, shall not be issued until further orders of this court.

"It is further ordered that the defendants pay the costs of this action, to be taxed by the clerk."

From the foregoing judgment the defendants appealed, assigning errors.

*Sharpe & Crutchfield and King, Sapp & King for plaintiffs.*
*P. W. Glidewell and Brooks, Parker, Smith & Hays for defendants.*

Brogden, J.  The question of law at issue is clearly and succinctly stated in the brief of the learned counsel for defendants in the following language:

"The question in this case involves the determination of which faction of the divided congregation of the Dan River Primitive Baptist Church shall have the use, custody, and control of the church property.  The division grew out of a dissension in the congregation concerning the matter of discipline and church government, and the question is pre-

sented whether the majority faction, represented by the defendants, who are in possession of the church property, have the right under the organization of the Primitive Baptist Church to continue in the possession and control, or whether they may be enjoined from interfering with the plaintiffs in the use and control of the church property, on the ground that the plaintiffs are adhering to the proper principles of government and discipline maintained in the Primitive Baptist Church, and that the defendants are not so abiding by those principles."

It was alleged in the complaint that the Dan River Primitive Baptist Church was organized in 1884, and "has at all times since then and is now a duly and regularly organized church of the Primitive Church faith." That said Dan River Primitive Baptist Church has at all times been conducted and governed by the rules, customs and usages which control Primitive Baptist churches. "And the government of said Dan River Primitive Baptist Church at all times has been the same as all other Primitive Baptist churches, being governed by the rules, customs and usages which have been adopted and which were in force among the Primitive Baptist churches, all of which had their origin in and were the outgrowth of the first or original Primitive Baptist church established in this country."

The defendants, in their answer, admit that "said Dan River Primitive Baptist Church has at all times been conducted and governed by the rules, customs and usages which control Primitive Baptist churches. It is further averred that the defendants have at all times and are now conducting the Dan River Primitive Baptist Church in exact accord with the rules, customs and usages of the original Primitive Baptist church established in this country."

Upon these allegations and admissions two questions immediately arise?

1. What are the rules, customs and usages which control Primitive Baptist churches?

2. What is the relation of these rules, usages and customs to the independent governmental sovereignty of a Primitive Baptist Church?

The rules appearing in the evidence bearing upon this controversy are as follows:

(a) All business of the church shall be decided by a majority vote, except fellowship, which shall be unanimous.

(b) We believe every church is independent in matters of discipline, and that associations, councils, or conferences of ministers or churches are not to impose on the church the keeping, holding or maintaining of any principle or practice contrary to the church's judgment.

(c) If a minority shall be grieved, at any time, by the majority, they are directed to make the same known immediately to the church, and if

satisfaction cannot be obtained, it may be necessary in that case to call for help from sister churches.

(d) Especially does the language of Christ, in Matthew 18:15-18, demonstrate that the church is the highest and last ecclesiastical authority on earth; that there can be no appeal, under the law of Christ, from the decision of the church to an presbytery or synod or general assembly, or conference, or priesthood, or prelate, or papacy, or association, or any other earthly authority.

(e) That after a church has excluded one of its members, and classed him with heathens and publicans, it is not only unscriptural, but also thoroughly absurd, to suppose that any man or set of men can, by any exercise of authority, put back such an offender in the fellowship of that church.

The last two rules were introduced in evidence from Hassell's Church History, which is recognized among Primitive Baptists as an outstanding authority on rules, usages and laws governing the Primitive Baptist Church.

The evidence tended to show that J. R. Wilson was pastor of the Dan River Baptist Church; that prior to the time he became pastor of that church he had been a member of a church of like faith in Danville, Virginia, and had been excluded from fellowship; that about two months after his exclusion he had returned to the church and requested to be reinstated, which request was denied. Thereafter, he was received into membership of the Old Mill Primitive Baptist Church. Subsequently, he became pastor of the Dan River Primitive Baptist Church. The question arose in the church as to whether Wilson could hold the office of pastor until he had been restored to membership in the identical church which had excluded him. The controversy was brought before a regular church conference and a vote taken upon the question, and a majority of the members voted to retain Wilson as pastor. The evidence is not quite clear as to the numerical strength of the two factions, but the plaintiffs concede that the Wilson faction is in the majority. The minority faction, or anti-Wilson faction, asked for advice from the association to which this church belonged, to wit, Upper Country Line. In response to this request, a conference was called. Representatives from eight churches met with the Dan River Church, without notice to the defendants, and after hearing the statement of the controversy, advised Dan River Church to declare nonfellowship with the Wilson faction upon the ground that they were in disorder, and thereupon the anti-Wilson or minority faction passed the following resolution: *"Resolved,* That we hereby declare nonfellowship for the disorderly faction or portion of Dan River Church, who fellowship and hold and stand by J. R. Wilson in disorder."

There was further evidence tending to show that thereafter the Wilson faction or majority faction had taken possession of the church property.

Hence, out of this setting, the dispute comes to this Court for determination.

All Baptist churches have the congregational system of government. They are independent sovereignties and exclusively self-governing units. They are sometimes referred to in the books and decisions as "little republics" or "independent republics." Certain it is that each church is an independent democracy, acknowledging no master save Christ, and recognizing no force except the force of its own intelligence, conscience, and judgment. Hence, it must necessarily follow that a majority of the membership in any given congregation, nothing else appearing, is entitled to control the church property and direct and control the administrative affairs of the congregation. But it is equally true that each church or congregation is an orderly unit as well as a self-governing unit, and that there are certain fundamental faiths, immemorial customs and usages and uniform practice which form a part of the church life and constitute an integral part of its function.

In other words, a majority in a Baptist church is supreme, or a "law unto itself," so long as it remains a Baptist church, or true to the fundamental usages, customs, doctrine, practice, and organization of Baptists. For instance, if a majority of a Baptist church should attempt to combine with a Methodist or Presbyterian church, or in any manner depart from the fundamental faiths, usages and customs which are distinctively Baptist, and which mark out that denomination as a separate entity from all others, then, in such case, the majority could not take the church property with them for the reason that they would not be acting in accordance with distinctively Baptist principles. Or suppose a majority of a Baptist church should determine to abandon immersion and receive members without either an individual profession of faith or baptism, such majority could not take possession of the church property and exclude the minority who remained true to the fundamental faith and practice, which through many generations of observance has become intimately and inseparably wrought into the organized life of every Baptist church.

The decisions upon the respective rights of minorities and majorities in Primitive Baptist churches and other Baptist churches are not uniform. The lack of uniformity arises from a variety of facts and circumstances upon which individual decisions are based, but the general principles of law are well established. Thus, in *App v. Lutheran Congregation,* 6 Pa., 201, it is said: "It is the duty of the Court to decide in favor of those, whether a minority or majority of the congregation, who are adhering to the doctrine professed by the congregation, and the form of

worship in practice, as also in favor of the government of the church in operation, with which it was connected at the time the trust was declared." Again, in *Schnorr's Appeal,* 67 Pa., 138, the Court said: "The title to the church property of a divided congregation is in that part of it which is acting in harmony with its own law; and the ecclesiastical laws, usages, and principles which were accepted among them before the dispute began are the standards for determining which party is right." Again, in *Mt. Zion Baptist Church v. Whitmore,* 13 L. R. A., 198 Iowa, the Court says: "If perchance a bare majority of some Baptist church should determine, on scriptural authority, their right to a plurality of wives, and, against the protests of a minority, devote the property of the church to the advocacy and practice of such a doctrine, under the claim of appellees that the church 'owes no allegiance to any man or body of men,' civil or ecclesiastical, except 'a majority of its members,' the only redress of the minority would be to retire from the church, and leave the property to the majority for such a purpose. Such a surrender of civil rights is without support on any principle of natural justice, and we believe without the sanction of any judicial tribunal." Also, in *Brundage v. Deardorf,* 55 Fed., 846, *Judge Taft, Chief Justice* of the Supreme Court, delivering the opinion of the Court, said: "The question is one of identity, and that identity is to be determined by a reference to the fundamental law of the church, which was the original contract or compact under which its organization was effected, and in pursuance of which and subject to which all the property acquired for its use became vested in the church. An open, flagrant, avowed violation of that original compact, by any persons theretofore members of the church, was necessarily a withdrawal from the lawful organization of the church, and the forfeiture of any rights to continued membership therein, and to the control and enjoyment of the property conferred on such organizations." In *Kerr v. Hicks,* 154 N. C., 265, *Clark, C. J.,* delivering the opinion, quoted with approval the following: "In church organizations, those who adhere and submit to the regular order of the church, local and general, though a minority, are the true congregation."

Some of the authorities dealing with property rights growing out of divided churches are as follows: *Gewin v. Mt. Pilgrim Baptist Church,* 51 Southern, 947, Ala.; *Allen v. Roby,* 67 Southern, 899, Miss.; *Finley v. Brent,* 11 L. R. A., 214, Va.; *Mack v. Kime,* 24 L. R. A., N. S., 675, Ga.; *First Baptist Church of Paris v. Fort,* 49 L. R. A., 617, Texas; *Smith v. Pedigo,* 32 L. R. A., 838, Ind.; *Bouldin v. Alexander,* 21 Law Ed., 69; *Boyles v. Roberts,* 121 S. W., 805, Mo.; *Middleton v. Ellerson,* 78 S. E., 739, S. C.; *Monk v. Little,* 182 S. W., 511, Ark.; *Windham v. Ulman,* 59 Southern, 810, Miss.; *Nash v. Sutton,* 117 N. C., 232; *Sim-*

*mons v. Allison,* 118 N. C., 770; *Kerr v. Hicks,* 154 N. C., 268; *Conference v. Allen,* 156 N. C., 524; *Gold v. Cozart,* 173 N. C., 612; 8 A. L. R., 102.

The defendants offered no evidence.

Elder J. W. Gilliam, witness for plaintiffs, testified that he was clerk of the Upper Country Line Association, of which Dan River Primitive Baptist Church was a member. He testified that all the rules governing Primitive Baptists are not written; that many rules are unwritten, and further, that "the rule among our churches is that when J. R. Wilson is turned out of the church that no church of our faith and order remains a gospel church in order and holds with the said J. R. Wilson. It hasn't got a right to impose the will of the association on that church. The Dan River Church was not in disorder as a whole, but had divided, a portion of the church standing loyal in doctrine and in practice and in the government that governs our association. . . . A Primitive Baptist church can exist in doctrine and rules and practice of the Primitive Baptist denomination and never belong to any association, so long as they remain in the doctrine and in the practice that governs the orthodox Primitive Baptists."

Randolph Perdue, a minister and moderator of the Pigg River Association, testified: "In case a minister who is elected pastor at a church is turned out of the church where he holds his membership, he is turned out of all churches in the Primitive Baptist faith and order everywhere. He can only be restored by coming back to that church where he was excluded and making acknowledgments in satisfaction to that church. In case a minister is excluded and members of another church follow him before he is restored, the church is in the same relation as the man that is excluded. . . . But after a church applies to an association to be admitted into the association, and she is received, then she is a sovereign so long and so far as she remains in order, in faith, and in practice of the laws and rules of the church. . . . I say that the church is an independent body as long as she remains in order."

F. W. Keene, witness for plaintiff, testified that he had been preaching for forty-five years, and was acquainted with the laws of the Primitive Baptist Church, and that these laws are both written and unwritten. Witness further testified: "When a man has been serving a church as its pastor, has been excluded from the church in which his membership was, 'let him be unto thee as a heathen and publican,' and he is no longer in fellowship of that church; and if he be one who has been a preacher, the practice among our people is that he lay down his gift; and that all sister churches who themselves recognize that man have no further right to exercise his gift among any of the churches called Primitive Baptists or Old School Baptists. If there are members of the church who permit

him to preach while he is out of the church, and who go with him, they have departed from the order and practice of our people and are themselves in the same disorder, for they are now affiliating with that one in disorder, and have become a partaker of his disorder which he himself is in, and they are no longer recognized as being in the order of the churches of our Lord Jesus Christ. . . . The church is that faction which is holding to the order and practice and doctrine of our people. That portion of the church may be small or it may be a majority, it is counted the church in order. . . . As to questions of discipline and church government, the majority ordinarily rule; not always. The majority can turn people out, can call a pastor, can dismiss a pastor, can turn a member out, can decide to discard an old building and to build a new one. I have known the minority of the membership of a church to be contending for holding fast to the practice, the order, the doctrine of the church, a 'few good names in Sardi who have not defiled their garments' have their names there; they continue in the doctrine and practice and order of the church, and have the right to the church; others have departed from the faith."

W. G. Dix, one of the plaintiffs, testified: "The rules and regulations of the church have always been this for forty years. If a man is guilty of anything and has to be turned out of the church, he cannot be recognized in any other Primitive Baptist church until he first goes back to the church he is turned out of and is reconciled in that church." There was other testimony to the same effect.

It is the duty of this Court to determine the merits of the controversy upon the record as presented. If the testimony in this particular record is to be believed, then there is a limitation to the independent sovereignty of a Primitive Baptist church, and that limitation is the order, practice, and doctrine of the denomination; or, to state the proposition differently, according to the testimony in the record before us, a Primitive Baptist church is a sovereign, self-governing unit so long as it remains in the order, practice, and doctrine prescribed by the written and unwritten law. And further, if the evidence is to be believed, the Wilson faction or majority faction is in disorder, that is to say, it has departed from the fundamental practice and order observed and recognized by Primitive Baptists from time immemorial.

The question, therefore, is not a mere controversy as to the qualifications of a preacher. The decision of such a question would undoubtedly lie within the exclusive jurisdiction of the local church. The real issue upon the evidence is whether or not the majority of a local Primitive Baptist church can retain as pastor a man who, under the doctrine, practice, and order of the church, is not a member of the denomination at all, which he professes to serve. Under the evidence in this case, such a

situation would constitute what is termed by Primitive Baptists "disorder." This term is used by the witnesses apparently in a broad sense, signifying the recognition of and adherence to the fundamental practice and immemorial customs and usages of that denomination. Perhaps the term "church polity" might be deemed synonymous with the term "order" as employed by Primitive Baptists.

Upon the record there was sufficient evidence to be submitted to the jury upon the questions involved, and the jury, by its verdict, has found that the plaintiffs, constituting the minority faction, are "the sole and only members of the Dan River Primitive Baptist Church, and further, that said plaintiffs are "entitled to the possession of the Dan River Primitive Baptist Church and its records."

The defendants rely upon the case of *Cheshire v. Giles,* 132 S. E., 479. That case involved a controversy with the same J. R. Wilson who is the subject of the present controversy, and therefore the case is directly in point. However, an examination of the case will disclose that it was not tried upon a record similar to the one before us, or upon the same theory. In the *Cheshire case, supra,* it appeared that a number of associations condemned Wilson, and held that those who supported him were in disorder, and advised that Primitive Baptists ought to withdraw fellowship from him. The Court said: "It is only shown that they have continued as their pastor one who has been excluded from membership in another church; that the Pigg River Association has condemned this action as improper, and recognized the minority faction as the true Primitive Baptist Church at Martinsville. Now, as to this, each faction and the association are clearly within their rights, but nevertheless it does not follow, because the minority are so held to be the true Primitive Baptists at Martinsville, in the opinion of the association, that this minority is entitled to take the church property away from the majority, who refuse to accept the advisory counsel of the association." It is apparent that in the *Cheshire case, supra,* the decision was based upon the ground that the judgment of the association had no binding effect upon the local congregation, because under the Primitive Baptist order and practice the advice or judgment of the association is purely voluntary, and has no effect whatever in controlling the judgment or action of the local church. Moreover, in the *Cheshire case, supra,* section 40 of the Virginia Code was invoked. This statute provides, in substance, that in the event of division in a congregation, a majority of the membership of such congregation entitled to vote "may decide the right, title, and control of all property for such congregation." Referring to the statute, the Court says: "This statute makes it unnecessary either to review or recite the numerous cases in which similar controversies have been determined." So that the *Cheshire case, supra,* rested upon two

grounds: First, that the association had no right to control the affairs of the local church; second, that the Virginia statute, in case of division, established a statutory method of determining the possession and control of property.

Our case is upon a different footing. Our case was not tried upon the theory that the association has any power to impose its will upon the local church, or to determine which faction constitutes the true church. The question with us is whether or not the independent sovereignty of the local church is limited by adherence to the principle of order, doctrine, and practice as handed down through generations of Primitive Baptist church life. Upon the record, there was sufficient evidence of such limitation to be submitted to the jury, and the jury has returned its verdict into court in accordance with law. Whether this record properly presents or reflects the proper and established church polity of Primitive Baptists, we know not. Our decision rests solely and exclusively upon the record as presented to this Court, and in accordance with that record, and for the reasons given, we hold that the judgment of the court should be

Affirmed.