(128 So. 781)

**MITCHELL et al. v. CHURCH OF CHRIST AT MT. OLIVE.**

5 Div. 48.

Supreme Court of Alabama.

May 29, 1930.

316

See, also, 219 Ala. 322, 122 So. 341.

Samford & Samford, of Opelika, for appellants.

Denson & Denson, of Opelika, for appellee.

BROWN, J.

The equity of the original bill filed by and in the name of The "Church of Christ at Mt. Olive" was sustained on a former appeal, and it was then ruled that if the respondents, appellants here, desired to challenge the authority of the solicitors to proceed in the name of the complainant, they should have invoked this inquiry at the first term after the filing of the bill, by motion or plea. Mitchell et al. v. Church of Christ at Mt. Olive, 219 Ala. 322, 122 So. 341.

The necessity for this course of procedure arises from the provisions of the statute authorizing suits in the name of an unincorporated organization or association, without naming any of the individuals constituting the organization or association. Code 1923, §§ 5723–5728.

While the suit so filed and prosecuted is in the name of the organization or association, it is in fact the members of the organization or association suing in the aggregate, and if those fostering and prosecuting the suit are using the name of the organization or association without right or authority, this is matter for abatement of the suit, and is analogous to the practice prevailing both in suits at law and in equity, requiring that when the

party sued would deny the capacity in which the plaintiff or complainant sues, it must be done by plea. Sims, Ch. Prac. § 471. A like practice prevails where the defendant desires to question the sanity of the complainant. Sims, Ch. Prac. § 55.

The cross-bill concedes that the complainant church owns the property and is entitled to its use, but asserts that the respondents are the church, and they only have the right to use the name of the church and its property. This is a matter, under the ruling on the former appeal, that should have been presented by motion or plea, and the foregoing, it would seem, answers fully the appellants' contention.

The burden of appellants' contention' is that the majority of the congregation, by the election of a pastor who belonged to a church in La Grange, Ga., which was not in fellowship with the Mt. Pisgah Primitive Baptist Church in Chambers county, Ala., a sister church recognized by the complainant, Mt. Olive Church of Christ, violated the ninth article of faith and practice of the complainant church, to the effect, "We believe that no minister has the right to administer the ordinances, only such as are * * * *in fellowship with the church of which he is a member*," and become heretics; and that the use of the church property is a perversion of the trust with which the property is charged. (Italics supplied.)

We are not advised·by the averments of the cross-bill as to the terms of the conveyance by which the title of the property passed to the church or its use, the averments of the cross-bill as last amended being: "Respondents aver and maintain that all the property which has been deeded to the Mt. Olive Church is subject to an implied trust and this trust is still alive, having been confided to the congregation to keep and dedicate to the old doctrines on which the old Mt. Olive Church was founded and constituted."

■ As was said in Manning et al. v. Yeager et al., 203 Ala. 185, 82 So. 435: "This court has had occasion in several cases to state, as from the temporal viewpoint, ·the nature of the constitution and government of Baptist churches. We may repeat to this extent: Each Baptist church is within itself a pure democracy; it is the right of the majority to rule; the will of the majority [as a general rule] having been expressed, it becomes the minority to submit."·' And in the opinion of the court a score or more cases are cited as sustaining these utterances.

In the early history of the Baptist Church in the United States, the Supreme Court of the United States, in Watson v. Jones, 13 Wall. 679, 724, 20 L. Ed. 666, declared the principles which should govern the civil courts in the determination of property rights not subject to an express trust between contending factions of an independent or congregational church. In that case it was said:

"The second class of cases which we have described has reference to the case of a church of a strictly congregational or independent organization, governed solely within itself, either by a majority of its members or by such other local organism as it may have instituted for the purpose of ecclesiastical government; and to property held by such a church, either by way of purchase or donation, with no other specific trust attached to it in the hands of the church than that it is for the use of that congregation as a religious society.

"In such cases where there is a schism which leads to a separation into distinct and conflicting bodies, the rights of such bodies to the use of the property must be determined by the ordinary principles which govern voluntary associations. If the principle of government in such cases is that the majority rules, then the numerical majority of members must control the right to the use of the property. If there be within the congregation officers in whom are vested the powers of such control, then those who adhere to the acknowledged organism by which the body is governed are entitled to the use of the property. The minority in choosing to separate themselves into a distinct body, and refusing to recognize the authority of the governing body, can claim no rights in the property from the fact that they had once been members of the church or congregation. This ruling admits of no inquiry into the existing religious opinions of those who comprise the legal or regular organization; for, if such was permitted, a very small minority, without any officers of the church among them, might be found to be the only faithful supporters of the religious dogmas of the founders of the church. There being no such trust imposed upon the property when purchased or given, the court will not imply one for the purpose of expelling from its use those who by regular succession and order constitute the church, because they may have changed in some respect their views of religious truth."

■ As an exception to this general rule, it is established by the weight of authority that the majority of each independent or congregational society, however regular its actions or procedure may be, may not, as against a faithful minority, divert the property of the society to another denomination, or to the support of doctrines *radically and fundamentally* opposed to the characteristic doctrines of the society, even though the property is subject to no express trust. This doctrine

318

was recognized in Manning et al. v. Yeager et al., supra. See, also, Kenesaw Free Baptist Church of Kenesaw v. G. S. Lattimer et al., 103 Neb. 755, 174 N. W. 296, 8 A. L. R. 98; Baptist City Mission Society of Denver v. People's Tabernacle Congregational Church of Denver, 64 Colo. 574, 174 P. 1118, 8 A. L. R. 102, and authorities cited in note page 113.

■■ The civil courts will not interfere unless property rights are affected, and to justify interference on the theory that the acts of the majority are a radical departure from and disavowal of the established characteristic fundamental doctrines and practices of the society, it is not enough that a schism or division has developed among the members, on account of differences of opinion in the interpretation and application of the declared doctrines and practices of the society; such matters must be settled by the society for itself in its own way. This much is essential to freedom of religious opinion, and with such matters the civil courts will not interfere. 23 R. C. L. 449, § 26.

■■ To justify interference it must be shown that the purpose of the majority or governing body is to make a gratuitous transfer of the property of the society to another denomination, or to disavow and depart from the characteristic, distinctive doctrines and practices, and devote the use of the property to doctrines radically opposed to the distinctive doctrines and practices of the society. Such purpose must appear either from an open avowal on the part of the majority, or from its acts and conduct manifesting such purpose beyond all reasonable doubt. Manning et al. v. Yeager et al., 203 Ala. 185, 82 So. 435; Mack v. Kime, 129 Ga. 1, 58 S. E. 184, 24 L. R. A. (N. S.) 675, 688; Mt. Zion Baptist Church v. Whitmore, 83 Iowa, 138, 49 N. W. 81, 13 L. R. A. 198; Baptist City Mission Society of Denver v. People's Tabernacle Congregational Church of Denver, supra; 23 R. C. L. 453–457, § 28.

■ Taking as true the averments of the cross-bill, it is clear that this controversy arises out of a mere difference of opinion as to the interpretation and application of paragraph 9 of the articles of faith, adopted in the early history of the complainant church, and falls short of showing a purpose on the part of the majority to depart from the characteristic doctrines and practices of the primitive Baptist faith.

The cross-bill is therefore subject to the demurrers, which were sustained without error.

Affirmed.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.