A. L. CANTERBURY, *et al.*

*v.*

RAY CANTERBURY, *et al.*

(No. 10888)

Submitted September 17, 1957. Decided November 26, 1957.

*Harold B. Eagle, H. E. Dejarnette,* for appellants.

*Clay S. Crouse, Thomas Canterbury,* for appellees.

HAYMOND, JUDGE:

In this suit in equity instituted in the Circuit Court of Monroe County in 1956 the plaintiffs, A. L. Canterbury, G. A. Evans, and Frank Mann, as trustees, and A. V. Canterbury, as clerk, of the Indian Creek Primitive Baptist Church located in Monroe County, West Virginia, seek to enjoin the defendants, Ray Canterbury, G. W. Miller, O. H. Mann, O. S. Mann, and Luther Miller, from interfering with the management of the church by the plaintiffs and depriving the plaintiffs of its use and possession, and to prohibit the defendants and persons associated with them from teaching or preaching in the church doctrines which are alleged to be contrary to its articles of faith.

To the bill of complaint the defendants filed a written demurrer which specified numerous grounds and which, by decree entered July 10, 1956, was sustained by the circuit court with leave to the plaintiffs to amend the bill of complaint. The defendants also filed an answer and an amended and supplemental answer to the bill of complaint which were later withdrawn by them without objection and by permission of the court. After the answers were withdrawn the plaintiffs declined to amend the bill of complaint and, by final decree entered December 5, 1956, the circuit court dismissed this suit and awarded costs against the plaintiffs. From that decree this Court granted this appeal on April 1, 1957, upon the petition of the plaintiffs.

By its ruling upon the demurrer, the circuit court held that the allegations of the bill of complaint, which to the

extent that they are material must be considered as true on demurrer, do not sufficiently state a cause of action by the plaintiffs against the defendants which is properly cognizable by a court of equity. Consequently it is necessary in the decision of this case by this Court upon this appeal to detail to some extent and consider the allegations contained in the bill of complaint.

The bill of complaint alleges that the plaintiffs are members of the Indian Creek Primitive Baptist Church located in Monroe County, West Virginia; that the plaintiffs, A. L. Canterbury, G. A. Evans and Frank Mann, are the duly elected trustees, and the plaintiff, A. V. Canterbury, is the duly elected clerk, of the church under the provisions of the constitution which governs the manner in which the church is managed; that the church is a member of the Indian Creek Primitive Baptist Church Association which is composed of other churches in the area affected and is governed by a constitution; that all the churches which compose the membership of the association subscribed to articles of faith which have been established by the original founders of the Primitive Baptist Church and constitute the religious doctrine upon which all such churches were founded and upon which the Indian Creek Primitive Baptist Church was founded and has always based its religious life; that the Indian Creek Primitive Baptist Church Association held a regular annual meeting at Hinton, Summers County, West Virginia, in August 1955; that at that meeting H. W. Morgan of Caldwell, West Virginia, was elected moderator and J. R. Lilly of Hinton, West Virginia, was elected clerk under the provisions of the constitution of the association; that at the first business meeting of the association a group of the membership left the meeting and under the leadership of J. I. Bowling of Beckley, West Virginia, without authority attempted to assume the leadership of the association; that before the annual meeting of the association other Primitive Baptist Church Associations in adjoining states had complained to the Indian Creek Primitive Baptist Church Association that

the group under the leadership of Bowling by violating the rules of the association and advocating unorthodox principles of religion had withdrawn from the association and had ceased to have authority to participate in its proceedings; and that under its constitution the association has the power to remove any church from the association which should violate its rules or deviate from its orthodox principles of religion.

The bill of complaint also alleges that on September 3, 1955, at the regular monthly business meeting of the Indian Creek Primitive Baptist Church the defendants caused a group of members who had advocated teachings which were contrary to the articles of faith of the church and a large number of persons, who were strangers to the regular congregation and who had not previously attended the church, to come to the church for the express purpose of removing from office the moderator, Lowell Lilly, during his temporary absence; that the defendants together with the group of regular members and the strangers who were not members of the congregation, over the objection of the plaintiffs and other regular members of the congregation, removed Lilly as moderator and appointed I. W. Kilby as the new moderator; that Lilly had served as moderator for eighteen years; that no charges had ever been preferred against him; that such action by the defendants and their associates, being unauthorized and in violation of the constitution of the church, was of no force or effect; that on Saturday, October 1, 1955, at the next regular business meeting of the church, the moderator, Lowell Lilly, was present; that the defendants and their associates were requested to present any charge entertained by them of misconduct upon his part but that they failed and refused to prefer any such charge; that the regular church membership then present, the strangers who had attended the previous meeting being absent, made a request that another vote be taken on the question of removing Lilly as moderator and appointing another person to succeed him; that the defendants at first agreed but later refused to take another vote on that

question; that the plaintiffs and their associates, who are the real congregation of the church, insisted that such vote be taken; that the defendants continued in their refusal to take such vote and, stating that the vote had been taken on September 3, 1955, refused to permit Lilly or the plaintiffs to vote again on that question; and that Lilly was then and still is the regularly elected and duly authorized moderator of the church but is prevented by the defendants and their associates from conducting meetings in accordance with the provisions of its constitution.

The bill of complaint further alleges that at the regular monthly business meeting of the church on Saturday, November 5, 1955, from which the plaintiffs were excluded, and in the absence of Lilly, the defendants and their associates voted to padlock the doors of the church and to prohibit the plaintiffs and their associates from worshipping in the church; that immediately after the meeting locks were placed on the doors of the church and written notice signed by the defendants, Ray Canterbury and G. W. Miller, as deacons of the church, was posted; that the notice stated that the vote taken at the meeting was to place locks on the doors of the church and to stop unauthorized meetings by Lilly and his associates, and also stated that he and his associates were excluded from the association and the Indian Creek Primitive Baptist Church; that such notice violated the constitution of the church and prohibited its lifelong members from worshipping in it; that despite the warnings contained in the notice the plaintiffs have continued to attempt to worship in the church but have done so at different hours from those used by the defendants and their associates who, under the leadership of Kilby as moderator, have usurped the regular hours for business meetings and worship and have declared their determination to prevent the plaintiffs from worshipping in the church at any time; that the defendants, by their improperly elected moderator, are continuing the practice of teaching and preaching, in the Indian Creek Primitive Baptist Church, unauthorized doctrines in violation of its

constitution and articles of faith; that the unauthorized doctrines advocated by the defendants and their associates, and Kilby, as moderator, are: "That the birth of the spirit is not necessary except to see the church here in time; that there is no hell beyond this life; and that goats are sheep in disobedience;" that those doctrines are contrary to the teachings and beliefs of the Primitive Baptist Church and the Indian Creek Primitive Baptist Church; that such doctrines are contrary to the article of faith of the church and are "alien" to the Indian Creek Primitive Baptist Church, the association, and all other Primitive Baptist Associations; and that to continue to teach such doctrines in the Indian Creek Primitive Baptist Church will result in its expulsion from the Indian Creek Primitive Baptist Association and the national parent association and destroy the purposes for which the Indian Creek Primitive Baptist Church was organized which were to teach and follow the articles of faith of the Primitive Baptist Church and to adhere to the rules and regulations promulgated in its constitution.

The bill of complaint further alleges that at a business session of the Indian Creek Primitive Baptist Church on October 1, 1955, Gilmer Wallace and the plaintiffs, Frank Mann and G. A. Evans, were appointed trustees of the church and their appointment as such was recorded in the Office of the Clerk of the County Court of Monroe County but subsequently Gilmer Wallace resigned as trustee because of ill health and the plaintiff, A. L. Canterbury, was appointed as trustee in his place; that the appointment of the plaintiffs as trustees was done by proper authority under the provisions of the constitution by which the church is governed; that the defendants and their associates, with knowledge of the appointment of the plaintiffs as trustees, subsequently appointed the defendants, O. H. Mann, O. S. Mann, and Luther Miller, as trustees, and caused their appointment to be recorded in the Office of the Clerk of the County Court; that the appointment so made by the defendants was improper and without authority; and that by such appointment by

the defendants they have created two sets of trustees for the church in violation of its constitution, have usurped the authority of the regularly appointed plaintiffs, and have attempted to perform the duties of trustees of the church.

The prayer of the bill of complaint for both general and special relief is "that the defendants may be prohibited from further interference in the conduct and management of the Indian Creek Primitive Baptist Church; that the defendants may be further prohibited from locking the doors of the church, or otherwise interfering with the worship of the plaintiffs and their associates; that the defendants and their associates may be restrained and enjoined from the further teaching or preaching of doctrines which are contrary to the Articles of Faith of the Indian Creek Primitive Baptist Church in this church; that the acts of appointment of a Moderator to replace Lowell Lilly and the appointment of subsequent trustees to the regularly appointed trustees of this church as committed by the defendants be declared null and void; that the Moderator who has been appointed by the defendants and their associates, I. W. Kilby be enjoined from further duty in this church as Moderator; that the defendants and their associates be enjoined from future use of the name, Indian Creek Primitive Baptist Church and enjoined from the use of the church building located on Indian Creek in Monroe County, West Virginia, and that the plaintiffs may have such further and other relief in the premises, as the nature of their case shall require."

The foregoing allegations of the bill of complaint show clearly that a bitter controversy or dispute, concerning the management and control of the property of the church and the doctrine to be taught or preached in it, exists between two discordant groups or factions, each of which is composed of members of the congregation.

The question for decision by this Court upon this appeal is whether the allegations of the bill of complaint suffic-

iently state a cause of action which may properly be entertained and determined by a court of equity.

A well established and salutary general principle, which is consonant with the constitutional guarantee of freedom of religion and the fundamental and widely recognized doctrine of the separation of church and state, is that civil courts are not concerned with and have no jurisdiction to interfere in controversies of a purely ecclesiastical nature and that they will interpose to control the proceedings of a religious organization only when its civil or property rights form the basis of the relief sought in such controversies. *Woodrum* v. *Burton,* 88 W. Va. 322, 107 S. E. 102; *Watson* v. *Jones,* 13 Wall. 679, 20 L. Ed. 666; *Mitchell* v. *Church of Christ at Mount Olive,* 221 Ala. 315, 128 So. 781, 70 A. L. R. 71; *McClusker* v. *Rakestraw,* 164 Ga. 30, 137 S. E. 394; *Hall* v. *Henry,* 159 Ga. 80, 124 S. E. 883; *King* v. *Smith,* 106 Kan. 624, 189 P. 147; *Clapp* v. *Krug,* 232 Ky. 303, 22 S. W. 2d 1025; *Thomas* v. *Lewis,* 224 Ky. 307, 6 S. W. 2d 255; *Everett* v. *First Baptist Church of Sussex,* 6 N. J. Mis. Rep. 640, 142 A. 428; *Katz* v. *Goldman,* 33 Ohio App. 150, 168 N. E. 763; *Cage* v. *Cansler,* 130 Okla. 70, 265 P. 112; *Cage* v. *Cansler,* 119 Okla. 36, 248 P. 612; *Cape* v. *Moore,* 122 Okla. 229, 253 P. 506; Ann. I, 70 A. L. R. 75. In *Woodrum* v. *Burton,* 88 W. Va. 322, 107 S. E. 102, this Court held in point 1 of the syllabus that "Only when civil or property rights of a religious organization form the basis of the relief sought can a court of equity inquire into the ecclesiastical beliefs peculiar to the organization."

Another principle supported by the weight of authority is that the majority of each independent or congregational society, however regular its actions or procedures may be, may not, as against a faithful minority, divert the property of the society to another denomination, or to the support of doctrines radically and fundamentally opposed to the characteristic doctrines of the society, even though the property is subject to no express trust and that civil courts will exercise jurisdiction in a controversy of that

nature. *Mitchell v. Church of Christ at Mount Olive*, 221 Ala. 315, 128 So. 781, 70 A. L. R. 71; *Watson v. Jones*, 13 Wall. 679, 20 L. Ed. 666; *Manning v. Yeager*, 203 Ala. 185, 82 So. 435; *Dyer v. Superior Court of California*, 94 Cal. App. 260, 271 P. 113; *Baptist City Mission Society of Denver v. People's Tabernacle Congregational Church of Denver*, 64 Col. 574, 174 P. 1118, 8 A. L. R. 102; *Everett v. Jennings*, 137 Ga. 253, 73 S. E. 375; *Mattson v. Saastamoinen*, 168 Minn. 178, 209 N. W. 648; *Geiss v. Trinity Lutheran Church Congregation*, 119 Neb. 745, 230 N. W. 658; *Grupe v. Rudisill*, 101 N. J. Eq. 145, 136 A. 911; *Dix v. Pruitt*, 194 N. C. 64, 138 S. E. 412.

In *Mitchell v. Church of Christ at Mount Olive*, 221 Ala. 315, 128 So. 781, 70 A. L. R. 71, in which the Supreme Court of that State affirmed the decree of a circuit court which sustained a demurrer to a cross-bill filed by the defendants in a suit to enjoin them from interference with certain rights in church property, the court said:

"The civil courts will not interfere unless property rights are affected, and to justify interference on the theory that the acts of the majority are a radical departure from and disavowal of the established characteristic fundamental doctrines and practices of the society, it is not enough that a schism or division has developed among the members, on account of differences of opinion in the interpretation and application of the declared doctrines and practices of the society; such matters must be settled by the society for itself in its own way. This much is essential to freedom of religious opinion, and with such matters the civil courts will not interfere. 23 R. C. L. 449, §26.

"To justify interference it must be shown that the purpose of the majority or governing body is to make a gratuitous transfer of the property of the society to another denomination, or to disavow and depart from the characteristic, distinctive doctrines and practices, and devote the use of the property to doctrines radically opposed to the distinctive doctrines and practices of the society.

* * *. *Manning et al.* v. *Yeager et al,* 203 Ala. 185, 82 So. 435; *Mack* v. *Kime,* 129 Ga. 1, 58 S. E. 184, 24 L. R. A. (N. S.) 675, 688; *Mt. Zion Baptist Church* v. *Whitmore,* 83 Iowa 138, 49 N. W. 81, 13 L. R. A. 198; *Baptist City Mission Society of Denver* v. *People's Tabernacle Congregational Church of Denver,* supra; 23 R. C. L. 453—457, s. 28."

In *Woodrum* v. *Burton,* 88 W. Va. 322, 107 S. E. 102, this Court held in point 2 of the syllabus that "Where one of two church factions excludes the other from the church property on the ground of departure from the doctrinal beliefs of the organization, for the advancement of which beliefs a trust was impressed, expressly or impliedly, by the deed originally conveying the property for church purposes, the departure, to warrant the exclusion, must be vital and substantial. Refined doctrinal distinctions are not sufficient for that purpose."

In a church which is strictly congregational or independent in its organization, which is governed solely within itself, either by a majority of its membership or by such other local organism as it may have instituted for the purpose of ecclesiastical government, and which holds property either by way of purchase or donation, with no other specific trust attached to it than that it is for the use of the church, the numerical majority of the membership of the church may ordinarily control the right to the use and title of such property. 45 Am. Jur., Religious Societies, Section 54; *Kenesaw Free Baptist Church* v. *Lattimer,* 103 Neb. 775, 174 N. W. 296, 8 A. L. R. 98; *Watson* v. *Jones,* 13 Wall. 679, 20 L. Ed. 666; *Woodrum* v. *Burton,* 88 W. Va. 322, 107 S. E. 102; *Mitchell* v. *Church of Christ at Mount Olive,* 221 Ala. 315, 128 So. 781, 70 A. L. R. 71; *Sentell* v. *Friendship Baptist Church,* 214 Ala. 584, 108 So. 517; *Blount* v. *Sixteenth Street Baptist Church,* 206 Ala. 423, 90 So. 602; *Manning* v. *Yeager,* 203 Ala. 185, 82 So. 435; *Christian Church of Vacaville* v. *Crystal,* 78 Cal. App. 1, 247 P. 605; *Hall* v. *Henry,* 159 Ga. 80, 124 S. E. 883; *Everett* v. *Jennings,* 137 Ga. 253, 73 S. E. 375; *Clapp* v. *Krug,* 232 Ky. 303, 22 S. W. 2d 1025; *Thomas* v. *Lewis,* 224 Ky. 307, 6

S. W. 2d 255; *Bogard* v. *Boone,* 200 Ky. 572, 255 S. W. 112; *Spenningsby* v. *Norwegian Evangelical Lutheran Trinity Congregation of Ada,* 152 Minn. 164, 188 N. W. 217; *Saint Paul English Lutheran Church of Hildreth* v. *Stein,* 115 Neb. 114, 211 N. W. 611; *Dix* v. *Pruitt,* 194 N. C. 64, 138 S. E. 412; *Katz* v. *Goldman,* 33 Ohio App. 150, 168 N. E. 763; *Cape* v. *Moore,* 122 Okla. 229, 253 P. 506; *Nagle* v. *Miller,* 275 Pa. 157, 118 A. 670.

When the property of a church of a congregational form of government is wrongfully and violently seized and retained by a minority of its members, to the exclusion of the majority of its members and contrary to the expressed wish of the majority, a court of equity will entertain such controversy and award equitable relief. *Woodrum* v. *Burton,* 88 W. Va. 332, 107 S. E. 102.

As to the effect of action taken by an association of churches in connection with a conflict in fundamental doctrinal beliefs between the members of an independent church affiliated with such association, this Court has held in point 3 of the syllabus in *Woodrum* v. *Burton,* 88 W. Va. 322, 107 S. E. 102, that "The decision of associations or councils of Baptist churches, whose form of government is purely congregational, that doctrines adhered to by a majority of the church membership conflict with the fundamental Baptist doctrinal beliefs, is not conclusive upon the question of the right of the minority to control the church property, unless the decision directly or impliedly is assented to by the parties interested, or accepted and adopted by a majority of the membership of the church present and participating in a church business meeting called for that purpose, upon due and sufficient notice. Such associations and councils are mere voluntary and advisory judicatories, and their findings have no conclusive effect."

When tested by the well settled principles enunciated and applied in the above cited cases, the bill of complaint fails to state a cause of action cognizable by a court of equity and is insufficient on demurrer.

There is no allegation of facts in the bill of complaint which show the form of ecclesiastical government under which the Indian Creek Primitive Baptist Church is organized and functions, though it is widely recognized, as appears from statements in the opinions of many cases, that Baptist churches are generally organized as independent or congregational religious societies in which each church or congregation is a self-governing unit. The allegations of the bill of complaint do not show that the Indian Creek Primitive Baptist Church is an independent or congregational religious society which is governed solely within itself either by a majority of its members or by any other form of self-imposed authority.

Though the bill of complaint alleges that the church is governed by a constitution, it fails to allege any provisions of the constitution which prescribe the manner in which it is governed or its property is managed or controlled. If it could be assumed that the Indian Creek Primitive Baptist Church is an independent or congregational self-governing organization in which the majority of its members is its governing authority and controls its property, the allegations of the bill of complaint fail to show which of the two discordant groups or factions represents or constitutes a majority of its members. Though there is an allegation that the plaintiffs and those associated with them are the real congregation of the church, there is no allegation that they constitute a majority of its members or that the opposition group or faction constitutes a minority, or does not constitute a majority, of the members of the church. If the character of the form of government of the church is independent or congregational and the plaintiffs and their associates constitute a majority of the members of the church and have not made a fundamental departure from the characteristic doctrinal beliefs of the Baptist Church they would be entitled to conduct its affairs and to control the use of its property; but whether they do or do not constitute a majority of the members of the church can not be determined from the allegations of the bill of complaint. The same comment

applies to the allegations concerning the defendants and their associates; but whether they do or do not constitute a majority of the members of the church can not be determined from the facts alleged.

The bill of complaint refers to articles of faith to which all churches which compose the membership of the Indian Creek Primitive Baptist Church Association, including the Indian Creek Primitive Baptist Church, subscribe, and alleges that the articles of faith were established by the original founders of the Primitive Baptist Church and constitute the religious doctrine upon which all Primitive Baptist Churches were founded and upon which the Indian Creek Primitive Baptist Church has always based its religious life; but the articles of faith are not exhibited with the bill of complaint and it does not set forth their substance or any of their applicable provisions. Though the bill of complaint also charges that the defendants and their associates advocate unauthorized doctrines in violation of the constitution and the articles of faith of the Indian Creek Primitive Baptist Church and alleges that such unauthorized doctrines are "That the birth of the spirit is not necessary except to see the church here in time; that there is no hell beyond this life; and that goats are sheep in disobedience;" there are no allegations which show or specify the particular article or articles of faith violated by the advocates of such beliefs, or the degree or extent of such violations, or whether such beliefs, if proscribed by the articles of faith, constitute a fundamental departure from characteristic Baptist doctrine which warrants the exclusion of those who advocate such beliefs from membership in the church and participation in its government.

The bill of complaint also fails to allege sufficient facts which show how and by what authority three of the plaintiffs were selected as trustees and one of the plaintiffs was selected as clerk of the church or how, and by what authority, or lack of authority, the defendants were selected as trustees to succeed the plaintiffs in that capacity.

The bill of complaint contains allegations that the Indian Creek Primitive Baptist Church Association held its regular annual meeting in August 1955 at which certain officials of the association were elected; that at the first business meeting of the association a group of the members left the meeting; that one of the group, without authority, attempted to assume the leadership of the association; and that prior to the annual meeting of the association other Primitive Baptist Church associations had complained to the Indian Creek Primitive Baptist Church Association that the foregoing group by violating the rules of the association and advocating unorthodox principles of religion had withdrawn from the association and had ceased to participate in its proceedings. The bill of complaint, however, does not contain any allegation that the association took any official action concerning the conduct of the group or rendered any decision which in any way affected the practice of religion or the doctrine advocated by the members of the Indian Creek Primitive Baptist Church. For that reason the allegations of the bill of complaint concerning the religious dispute within the association, the withdrawal of the group, and its unauthorized leadership are not relevant to any question here involved and do not constitute the basis for the award of any relief in this suit. Even if the association had rendered any such decision it would not have been conclusive upon the members of the church unless assented to by the parties interested or adopted by valid action of a majority of the members of the church at a proper meeting regularly held for that purpose. *Woodrum* v. *Burton,* 88 W. Va. 322, 107 S. E. 102.

Inasmuch as the allegations of the bill of complaint fail to show whether the plaintiffs and their associates or the defendants and their associates constitute a majority of the membership of the Indian Creek Primitive Baptist Church, the validity of the action taken at the regular monthly business meeting on September 3, 1955, at which Lilly was removed as moderator and Kilby was appointed in his place and stead; or of the refusal of the defendants

and their associates who were apparently in control of the next regular business meeting on Saturday, October 1, 1955, to prefer charges against Lilly or to permit a vote to be taken on the questions of his removal and the appointment of his successor; or of the action taken by the defendants at the regular monthly business meeting on Saturday, November 5, 1955, in voting to padlock the doors of the church and to prohibit the plaintiffs and their associates from worshipping in the church, and in subsequently excluding them from business meetings and prohibiting them from worshipping in the church during the hours regularly assigned for those purposes, can not be determined under the allegations of the bill of complaint.

It does not appear from all or any of the allegations of the bill of complaint that the unfortunate differences which now exist between the two groups or factions within the church can not be properly resolved by prompt and effective action by a majority of its members in the manner provided by its constitution or by such means as a majority may determine to adopt. When a situation of that character is shown to exist, the determination of a controversy between the members of a religious organization, by its duly constituted governing authority, will not be interfered with or controlled by a court of equity.

In a suit in equity between members of a religious organization in which the plaintiffs seek an injunction to prevent the defendants from interfering with the use of its property by the plaintiffs, a bill of complaint which fails to show the form of government of the organization, or that the plaintiffs and their associates constitute a majority of its members, or that the defendants and their associates, who have excluded the plaintiffs from the use of the property, do not constitute a majority of such membership, or that the defendants and their associates have made a vital and substantial departure from the fundamental doctrinal beliefs of the organization, does not state a cause of action cognizable by a court of equity and is insufficient on demurrer.

The plaintiffs cite and rely upon *Woodrum* v. *Burton*, 88 W. Va. 322, 107 S. E. 102, to sustain their claim to the relief sought by them in this suit. The facts which were clearly established in that case distinguish it from the case at bar. In that litigation the plaintiffs in the first of two suits, which were heard together, were the minister and certain members of a Baptist Church which used a congregational form of government. They sought a mandatory injunction against the defendants, also members of the church, to require them to remove locks and chains which they had caused to be placed upon the church buildings and to permit the minister, who was charged by the defendants with the advocacy of unauthorized doctrinal beliefs, to continue to conduct in the church services which had been interrupted by the defendants. It further appeared in that case that a majority of the membership of the church constituted its governing authority and had approved the conduct and accepted the beliefs expressed by the minister, and that those beliefs did not constitute a vital and substantial departure from the doctrinal beliefs of the church. Upon the foregoing facts established in the *Woodrum* case, this Court held that the seizure and retention of the property of the church by the defendants, who constituted a minority of its members, to the exclusion and contrary to the expressed wish of the majority, furnished a sufficient basis for the award of equitable relief and issued an injunction against the defendants. The vital difference between that case and the case at bar is that the bill of complaint in this case does not allege sufficient facts to bring it within the holding in the *Woodrum* case.

As the bill of complaint without proper amendment is insufficient on demurrer, the final decree which dismissed it and awarded costs in favor of the defendants and against the plaintiffs is affirmed.

*Affirmed.*