## SAMUEL HARKER *v.* W. L. ARENDELL.

A brought an action against B to recover a horse, and the sheriff re-plevied the horse, but delivered him to the defendant again upon the filing of the statutory bond by C, from whom B claimed title. C was not made a party to the action. Upon the trial there was a verdict for the plaintiff, and the court gave judgment against the defendant for the recovery of the horse and damages as assessed by the jury. At the same time, the court rendered summary judgment against the parties to the replevin bond. B then filed an affidavit, alleging that he had refused to file any bond for the re-delivery of the horse, and had informed C that he would not defend the suit; and that unless C became defendant in his stead, he would deliver the horse to the plaintiff, and that he made the same statement to the plaintiff; that it was understood between A, B and C that the suit was no longer to continue against B but that C was to become defendant, and in consequence of this understanding B did not employ counsel, and did not know that he was still a party to the suit until he came into court as a witness in the cause. Upon the filing of this affidavit, it was ordered that no execution issue upon the judgment against B, until the further order of the court. Upon an appeal to this court:

*It was held*, 1, That there was no error in the court below rendering summary judgment upon the replevin bond; and

2, That the order of the court staying execution on the judgment against B, was error.

(*Boylston Insurance Co.* v. *Davis*, decided at this term, *ante* page 78, cited and approved.)

This was a CIVIL ACTION for the claim and delivery of personal property, tried before *McKoy, J.*, at August Term, 1875, of CARTERET Superior Court.

The action was brought by the plaintiff to recover possession of a mare, alleged to be unlawfully detained by the defendant. The mare was replevied by the sheriff, and re-delivered to the defendant, upon an undertaking being filed in accordance with the statute, by one Edward E. Perry, from whom the defendant claimed to derive his title. Upon the trial of the cause, the jury found all the issues in favor of the

plaintiff, and assessed the value of the mare at sixty-five dollars, with damages to the amount of thirty dollars. Thereupon the court gave judgment against the defendant and the sureties to the undertaking above mentioned.

The defendant filed the following affidavit:

W. L. Arendell being duly sworn, says: " When the writ in this case was served on him and the horse was taken into possession by the sheriff, affiant refused to give a bond for her delivery, and informed Edward Perry, of whom he had purchased the horse, that he would not defend any suit for the horse, and that unless he, Perry, took his place and defended the suit, he would deliver up the property to the plaintiff; that said Perry gave bond and said he would defend the suit, and this affiant made the same statement to plaintiff, and it was distinctly understood by affiant and the plaintiff and said Perry, that the suit commenced by plaintiff against this affiant was no longer to continue against him, but that said E. Perry was to take his place; that under these circumstances affiant considered himself out of the case and took no farther concern about it, and had not the most remote idea that any suit was pending against him after the understanding between plaintiff and affiant and said Perry—never employed any counsel in the case and never took any further step in the case, and to his great surprise, upon coming into the court house this morning as a witness, he having been requested by Mr. J. M. Perry, counsel of E. Perry, to attend there as a witness in the case, supposing he was only a witness and not a party at all."

Whereupon his Honor directed the Clerk to enter upon the judgment docket as a memorandum, the following instructions for the Clerk: " It being made to appear to the court that W. L. Arendell surrendered the horse in controversy to the Sheriff, and Edward E. Perry replevied the same and that the writ has been defended by and for the benefit of E. E. Perry, and that he furnished the bondsmen: Therefore it is ordered

that no execution issue against W. L. Arendell until the further order of this court."

The defendants A. C. Davis and J. M. Perry, the sureties to the undertaking, except to the judgment against them, and to the order above mentioned:

1. Because no judgment can be rendered in the above action against said sureties.

2. Because said instructions to the Clerk are unauthorized and prejudicial to said sureties, and in derogation and violation of the terms of their undertaking.

The exceptions were overruled, whereupon the defendants Davis and Perry, sureties upon the undertaking, appealed.

*Green*, for the appellants.
*Hubbard*, contra.

PEARSON, C. J. The power of the court to render a summary judgment against the sureties on the undertaking, is settled by the case of *B y ston Insurance Co.* v. *Davis*, at this term.

We are not aware of any precedent either at law or in equity, or under the mixed mode of procedure introduced by C. C. P., which will sustain the order made by his Honor, on affilavit, directing the Clerk not to issue execution against Arendell (the defendant in the action) until further order.

The plaintiff had obtained a judgment against Arendell *for the pony*, and was entitled to the specific article and the damages assessed for its detention, and in case the property could not be had, then to the damages assessed for its valuation as well as the damages assessed for its detention. It is established by the judgment, that Arendell wrongfully held possession of the pony, which was the property of the plaintiff. Can any sound reason be suggested why the plaintiff should not have the fruit of his recovery?

But if upon any supposition the court had power to say to

the plaintiff, you must give up your property and accept damages in lieu thereof, for it can make no material difference to you whether you get your pony or its value in money, and your accepting its value will enable the court to do justice all around and settle a controversy that will grow up between Arendell and E. E. Perry, from whom (taking the affidavit to be true) he purchased, then other difficulties arise. E. E. Perry will say, you are seeking to make me liable to Arendell, upon a warranty of title, in a proceeding on affidavit, and in an action to which I am not a party of record and have no right to be heard ; which is contrary to the laws of the land and against the Bill of Rights.

The sureties will say, admit that E. E. Perry sold the pony to Arendell, and that it was at the request of Perry he signed the undertaking of Arendell to surrender the pony if plaintiff recovered in the action, still we were the sureties of Arendell, although we became so at the request of Perry, and by reason of our becoming the sureties of Arendell the pony was put back into his possession *and he still has the pony*. We signed the undertaking that Arendell would surrender the pony in the event that the plaintiff proved title, because of the fact that the pony was liable in the first instance, and we became his sureties relying on that fact. This is a manifest alteration of the obligation of the contract, if Arendell can be allowed to keep the pony, and by the action of the court throw upon us the burthen of paying the damages in the first place, and then seeking relief against E. E. Perry who is not a party of record or bound in any way by the action of the Judge. In other words the sureties insist that the Judge has put the boot on the wrong foot and ought to have allowed the action to take its regular and ordinary course, viz: let Arendell, the defendant of record, who has received the benefit of retaining possession of the pony, by the fact that he was enabled to do so, by our undertaking for him to see the pony delivered up, if plaintiff succeeded in the action, surrender the pony to

plaintiff and pay the damages for its use, while he had the benefit of its services; that is the foot to put the boot on, and then let him and E. E. Perry settle the matter as to warranty of title.

There is no precedent to support the ruling of his Honor, and I have treated it in a familiar way for the purpose of illustrating the danger of departing from the settled precedents and forms of the law, upon broad notions of doing complete justice under C. C. P.

Error. Judgment below modified so as to strike out the order to the Clerk, and allow execution on the judgment against the defendant.

PER CURIAM.　　　　　　　Judgment accordingly.