LUMBEE RIVER CONFERENCE OF THE HOLINESS METHODIST CHURCH, JULIAN RANSOM, BELTON BULLARD, M. L. LOWRY, TRUSTEES, CONSTITUTING THE BOARD OF ANNUAL CONFERENCE TRUSTEES OF LUMBEE RIVER CONFERENCE OF THE HOLINESS METHODIST CHURCH; J. R. LOWRY, AS BISHOP AND SUPERINTENDENT OF LUMBEE RIVER CONFERENCE OF THE HOLINESS METHODIST CHURCH; C. W. OXENDINE, AS PASTOR OF UNION CIRCUIT OF LUMBEE RIVER CONFERENCE OF THE HOLINESS METHODIST CHURCH, AND BRACY LOCKLEAR, TOMMIE CHAVIS AND RUSSELL OXENDINE, ON BEHALF OF THEMSELVES AND ALL OTHER MEMBERS OF UNION CHAPEL HOLINESS METHODIST CHURCH, v. FULLER LOCKLEAR, A. A. MAYNOR, J. W. JONES, LEONARD JACOBS, AND A. B. LOCKLEAR.

(Filed 7 June, 1957.)

1. **Religious Societies § 2—Where evidence discloses that church was member of Conference and bound by its Book of Discipline, instruction as to right to control property based on congregational organization, is error.**

   In an action to restrain defendants from interfering with plaintiffs' use of church property for the benefit of the ministry and membership of plaintiff Church Conference, it is error for the court to charge the rights of the parties to the control of the property predicated upon a finding that the Church was a sovereign and independent body, had reserved the right to withdraw from the Conference, and had exercised such right, and upon whether the deed to the Conference was executed without due authority of the congregation of the Church, when all of the evidence, including the stipulations of the parties, is to the effect that the Church was a member of the Conference and bound by its Book of Discipline, and there is no evidence that the Church had reserved the right to withdraw from the Conference or, if it had reserved such right, that it had exercised it, and it further appearing that the question of the ownership of the legal title of the church property had no bearing upon the use of the property under the rules and regulations laid down in the Book of Discipline.

2. **Trial § 5½—**

   A stipulation entered into by counsel for plaintiffs and defendants during the progress of the trial is conclusive and puts to an end any contention to the contrary.

3. **Religious Societies § 2—**

   Where trustees holding title to property for the benefit of a particular church convey the property to the conference of the church, ordinarily the conference must hold such title for the use and benefit of the church and not the conference.

4. **Trial § 29—**

   If all the evidence upon the trial tends to support plaintiffs' right to relief, plaintiffs are entitled to a peremptory instruction in their favor.

APPEAL by plaintiffs from *Mallard, J.,* January Civil Term 1957 of ROBESON.

This is an action in which the plaintiffs seek injunctive relief against the defendants, to restrain them from interfering with the plaintiffs' use of the Union Chapel Holiness Methodist Church property for the benefit of the ministry and membership of the Lumbee River Conference of the Holiness Methodist Church.

On 30 April 1860, Jesse Oxendine conveyed a 4-acre tract of land in Robeson County, on which the Union Chapel Holiness Methodist Church is located, to James Oxendine, Hugh Oxendine and Robert Chavis and their successors in office, in trust, for the use and benefit of the Union Chapel Church, a religious society.

Thereafter, a church building was constructed on the 4-acre tract of land, and in 1900 the Lumbee River Conference of the Holiness Methodist Church, hereinafter called Conference, was organized. The organization was perfected by three churches, to wit, Union Chapel, Hopewell and New Prospect. The meeting was held in the Union Chapel Church, which is called the "mother church" of the Conference. Additional churches, to wit, Cherokee Chapel, New Bethel, Macedonia and Riverside have been formed since. At present the Conference consists of the seven above-named churches, with a total membership of approximately six hundred.

Some time later, the building on the Union Chapel Church land was burned and the congregation proceeded to construct at another site, some one-half mile therefrom, another house of worship which was used until about 1923, and the church at the new site was known as Union Grove Church. The congregation that built the Union Grove Church was the congregation of the Union Chapel Church, and the same congregation rebuilt at the old site and moved into the present Union Chapel Church in 1923. During the period when the Union Chapel Church congregation was meeting at a different site, it remained a member of the Conference.

When the trustees of the Union Chapel Church began cutting timber on the original 4-acre site for the purpose of constructing a house of worship thereon, by reason of an affiliation of that church with a Conference of the regular Methodist-Episcopal Church prior to 1900, certain parties purporting to be trustees of the Union Chapel Methodist-Episcopal Church, brought an action in 1921 in the Superior Court of Robeson County against nine defendants, all members of the Union Chapel Church, to restrain them from trespassing upon the 4-acre tract of land conveyed to the trustees for the use and benefit of the Union Chapel Church, a religious society. The court held "that Paisley Locklear, George F. Spaulding and Duckery Jones, trustees of Union Chapel Church, a religious society, are the owners in fee simple and are entitled to the immediate possession of the following described land and premises, to wit (describing by metes and bounds the 4-acre tract of land

conveyed by Jesse Oxendine to trustees for the use of the Union Chapel Church)."

The Conference operates in accordance with what is called the Discipline of the Holiness Methodist Church, hereinafter referred to as the Book of Discipline. The Book of Discipline was admitted in evidence without objection as plaintiffs' Exhibit No. 1 and it was stipulated by counsel that ten copies of the Book of Discipline were to be filed with the Clerk of the Supreme Court for the use of the Court in lieu of printing the same in the record on appeal.

The plaintiffs introduced in evidence, without objection, the official journals or minutes of the annual sessions of the Conference for the years, 1923, 1924, 1926, 1937, 1947, 1954, 1955 and 1956. Counsel stipulated that such journals shall be made a part of the record and forwarded to the Clerk of the Supreme Court in lieu of printing the contents thereof in the record.

The plaintiffs likewise introduced in evidence a deed dated 24 November 1922 and recorded in the office of the Register of Deeds of Robeson County on the same date, executed by Paisley Locklear, George F. Spaulding, and Duckery Jones, trustees of the Union Chapel Church, a religious congregation, to Z. R. Jacobs, C. C. Lowry and J. R. Lowry, as trustees of Lumbee Conference of the Holiness Methodist Church, a religious society or association, for "the use and benefit of the ministry and membership of the Holiness Methodist Church, subject to the discipline, usage and ministerial appointments of said church as from time to time authorized and declared."

The Book of Discipline provides: "There shall be a Board of Annual Conference Trustees of the Holiness Methodist Church composed of three members. This board shall be elected at each Annual Session and must be members of the Annual Conference. Vacancies shall be filled by the Bishop. DUTIES: The Annual Conference Trustees shall receive, collect, and hold in trust for the benefit of the Conference any donations, grants of land, or other Conference property or bequeaths (sic), etc. They shall constitute the Conference Building Committee. The Board of Conference Trustees shall dispose of Conference property by order of the Conference."

Likewise, it provides: "The Church Board of Trustees shall look after the Church and Property and protect religious gatherings. Trustees of our churches have no right, by virtue of their office, to permit them to be used for other than religious purposes.

"Each church shall have a Board of Trustees composed of three members elected annually by the Quarterly Conference through the recommendation of the Pastor."

The Book of Discipline provides for a Cabinet composed of the Bishop, or presiding officer of the annual sessions, and the Conference

delegates, which appoints the preachers to the pastoral charges. The Conference divides the churches into Circuits. The Union Chapel Church and New Prospect compose Union Circuit. Under the plan of the Conference, the delegates to the annual sessions are elected by the Fourth Quarterly Conference of the local church, rather than by the congregation of such church.

The evidence tends to show that at the annual session of the Conference, 8-11 November 1956, Reverend C. W. Oxendine was appointed pastor of the churches composing the Union Circuit. According to the evidence, the appointment was made in the usual and customary manner which had been followed since 1900. The evidence further tends to show that the defendants prevented the duly appointed pastor from occupying the pulpit on Sunday morning, 18 November 1956, and since that time, not because of any irregularity in his appointment or because the membership of Union Chapel Church did not want him as pastor, but because of a controversy that arose prior to the meeting of the Annual Conference in 1956 over the deed that was executed by the trustees of the Union Chapel Church to the trustees of the Conference in 1922. The defendants contend that they did not discover that such deed had been executed until some time in 1955, and they want the title to the property to be put in the name of the trustees of the Union Chapel Church; and for the further reason that the defendant Fuller Locklear had entered into an agreement with the Bishop that the title to the property might be left in the name of the Conference trustees if the Bishop would admit a certain minister of another denomination, to wit, Howard Oxendine, to the Conference and assign him to the Union Circuit as an assistant pastor under the Reverend C. W. Oxendine, who was then pastor of that Circuit. The minister under consideration joined the Union Chapel Church, but, according to the testimony of the defendant Fuller Locklear, the Bishop had broken the agreement and had not given the new minister the assignment promised.

It is alleged in the defendants' answer that on 22 September 1956, the membership of the Union Chapel Church met in a business session and voted by a substantial majority to set up its own church program, conduct its own affairs, including calling a pastor and affiliating with such groups as it might thereafter desire, and that at said meeting it elected A. A. Maynor, J. W. Jones and Leonard Jacobs as trustees of the Union Chapel Church.

The defendant A. A. Maynor testified, "That deed had its place in the controversy. Come to be dissatisfactory when it was learned that the church had the deed. The preacher had something to do with the dissatisfaction; wound up by objecting to the deed when the preacher they wanted didn't go in. Some agreed to buy an automobile for the pastor and wanted the church to pay for it; and that is the way the row

started. The beginning place with me was the deed. The beginning place with the controversy was paying for the automobile for the fellow they wanted to be the preacher. The preacher they wanted and paying for the automobile for was Howard Oxendine. They wanted Howard Oxendine as assistant pastor; they did not want him for full-time pastor."

At the close of all the evidence, counsel for the plaintiffs and the defendants stipulated "that Union Chapel Holiness Methodist Church is a member of the Lumbee River Conference of the Holiness Methodist Church." Issues were submitted and answered as follows:

"1. Is Union Chapel Holiness Methodist Church a connectional form of church within the Lumbee River Conference of the Holiness Methodist Church? Answer: No.

"2. Are the plaintiffs, and those united with them, entitled to the use and occupancy of the premises of Union Chapel Holiness Methodist Church for the benefit of the ministry and membership of the Lumbee River Conference of the Holiness Methodist Church without interference from the defendants? Answer: No."

From the judgment entered on the verdict the plaintiffs appeal, assigning error.

*Varser, McIntyre, Henry & Hedgpeth and McKinnon & McKinnon for plaintiffs appellant.*
*Britt, Campbell & Britt for defendants appellee.*

DENNY, J. It is not contended that the title to the property on which the Union Chapel Holiness Methodist Church, hereinafter called Union Chapel Church, is located has been put in issue in this case so as to require an adjudication thereof. *Simmons v. Allison,* 118 N.C. 763, 24 S.E. 716. It is apparent, however, that the defendants' refusal to permit the pastor assigned to the Union Circuit, which is composed of the Union Chapel and New Prospect Churches, to hold services in the Union Chapel Church, is bottomed on a deliberate and planned course of conduct on the part of the defendants to force the Conference to put the title to the 4-acre tract of land, on which the Union Chapel Church is located, in the trustees of the Union Chapel Church rather than to permit the title to remain in the trustees of the Conference, or in lieu of such change, to force the Bishop of the Conference to approve and designate Howard Oxendine as assistant pastor of the Union Chapel Church. Some of the defendants so testified.

The defendants contend that the Union Chapel Church is a sovereign, independent, congregational church. Even so, it was stipulated in the trial below that such church is a member of the Conference. And it appears from the evidence disclosed by the record, including the Book

12—246

of Discipline, pursuant to which the Union Chapel Church has been governed since 1900, that such church is not independent or congregational in its form of government, but that it is an integral part of the connectional system adopted by the Conference to which it belongs. *Simmons v. Allison, supra.*

According to the undisputed evidence in the trial below, this church has continuously, since 1900, been subject to assessment by the Conference for payment of certain obligations of the Conference; that under the rules and regulations as laid down in the Book of Discipline for the conduct of the Conference and its member churches, the trustees of the local church must be elected not by the local congregation but by the Quarterly Conference. The Cabinet of the Conference appoints the pastors; the pastor of a Circuit appoints the Class leaders in the local church or churches. In fact, the church government of the Conference makes no provision for the congregations of the member churches to take any official action on any matter affecting the pastors, officers, or the local leaders thereof. The officers of the local church are elected upon recommendation of the pastor by the Quarterly Conference of such church, which Conference is composed of designated officials of that church. Such procedure is in no sense in accord with the customs and practices of a congregational church. *Reid v. Johnston,* 241 N.C. 201, 85 S.E. 2d 114; *Dix v. Pruitt,* 194 N.C. 64, 138 S.E. 412; *Windley v. McCliney,* 161 N.C. 318, 77 S.E. 226.

While as pointed out in the statement of facts herein, the defendants allege in their answer, "That on 22 September 1956 the membership of Union Chapel Church met in a business session and after due consideration voted by a substantial majority to thereafter set up its own church program, conduct its own affairs, including the calling of its pastor and affiliating with such groups as it may desire," and that at said meeting it elected A. A. Maynor, J. W. Jones and Leonard Jacobs as trustees of the Union Chapel Church, the defendants offered no evidence whatsoever in support of any of these allegations.

The plaintiffs except to and assign as error the following portion of the charge to the jury: "Gentlemen of the jury, if the congregation of, and the Union Chapel Church, or Union Chapel Holiness Methodist Church is a sovereign, independent body, that is, if it has a congregational type of church government, that is, that it is an independent body, one within which the individual congregation selects its officers and establishes its rules and regulations, and if it were voluntarily and temporarily acting within a larger body, with the reserved right to withdraw therefrom, and if the deed dated November 24, 1922, was executed by the Trustees of the Union Chapel Church to the Trustees of the Lumbee River Conference of the Union Chapel Holiness Methodist Church, and was executed and delivered without due authority

of the congregation of the said Union Chapel Church, and if the congregation of the Union Chapel Church has exercised such reserved right and withdrawn from the Lumbee River Conference of the Holiness Methodist Church, then you will answer this issue NO."

We think this assignment of error is well taken and must be upheld for the following reasons: (1) There was no evidence adduced in the trial below sufficient to support a finding that the Union Chapel Church is a sovereign, independent body. (2) Irrespective of who is entitled to hold the legal title to the land on which its house of worship is located, such controversy does not affect or change the rules and regulations laid down in the Book of Discipline for the government of the Conference and the member churches composing the Conference. (3) There is no evidence on this record tending to show that the Union Chapel Church reserved the right to withdraw from the Conference, or if it did reserve such right that it has exercised that right and withdrawn from the Conference.

The stipulation entered into by counsel for plaintiffs and the defendants, set out hereinabove, with respect to the membership of the Union Chapel Church in the Conference, is binding on the defendants and conclusively puts to an end any contention on their part that such church had theretofore withdrawn from the Conference. *Clapp v. Clapp,* 241 N.C. 281, 85 S.E. 2d 153; *Turner v. Livestock Co.,* 179 N.C. 457, 102 S.E. 849; Stansbury, N. C. Law of Evidence, section 166.

While under the present state of the pleadings the question of title is not before us for adjudication, it would seem that if the trustees of the Union Chapel Church executed the deed referred to in the statement of facts, in 1922, to the Conference trustees without the knowledge or approval of the Union Chapel Church, the Conference, unless there is some ground by which the Union Chapel Church is estopped, would have no right to hold such property for the use and benefit of the Conference but would be required to hold it for the use and benefit of the Union Chapel Church, for whose benefit it was originally conveyed. *Wheeless v. Barrett,* 229 N.C. 282, 49 S.E. 2d 629; *Western N. C. Conference v. Tally,* 229 N.C. 1, 47 S.E. 2d 467.

There is no evidence revealed on the record before us which, in our opinion, is sufficient to justify a denial of the relief sought by the plaintiffs. Therefore, the judgment entered below will be vacated and the cause remanded for another hearing. Furthermore, if upon such hearing, upon the pleadings and issues as now cast, the evidence is substantially in accord with that adduced in the trial below, the plaintiffs will be entitled to have the court give a peremptory instruction on each issue. *Reynolds v. Earley,* 241 N.C. 521, 85 S.E. 2d 904; *Shelby v. Lackey,* 236 N.C. 369, 72 S.E. 2d 757; McIntosh, N. C. Practice and Procedure (2nd Ed.), section 1516.

The plaintiffs are entitled to a new trial and it is so ordered.

New trial.