C. J. MOORE, JR. v. DAVE HUMPHREY

(Filed 10 January, 1958)

1. **Judgments § 27b—**

   A void judgment is one lacking some essential element, such as jurisdiction, and may be ignored or treated as a nullity at any time.

2. **Judgments § 27d—**

   An irregular judgment is one entered contrary to the procedure and practice allowed by law in some material respect, and may ordinarily be set aside on motion in the cause.

3. **Judgments § 27c—**

   An erroneous judgment may be corrected solely by appeal.

4. **Claim and Delivery § 5—**

   The sureties on plaintiff's undertaking in claim and delivery are parties of record, and a defendant who recovers judgment against the plaintiff is entitled to summary judgment against plaintiff's sureties in accordance with the statute and the terms of the bond.

5. **Same—**

   While ordinarily judgment for defendant in claim and delivery should provide first for the return of the property with damages for its deterioration and detention, where the parties stipulate that the property cannot be returned, such provision is neither necessary nor appropriate.

6. **Trial § 5½—**

   A stipulation of the parties is a judicial admission and binding on them.

7. **Same: Claim and Delivery § 5—**

   The sureties in plaintiff's undertaking in claim and delivery are bound by stipulations entered into between plaintiff and defendant and by admissions in the pleadings in that action, there being no contention that plaintiff's attorneys were not authorized to make the stipulations and admissions.

8. **Pleadings § 25½—**

   An admission in a pleading is as effectual as if the fact admitted were found by a jury, and is binding upon the pleader even though the admission is not introduced in evidence.

9. **Trial § 39—**

   The verdict of the jury may be given significance and interpreted by reference to the pleadings, the facts in evidence, the admissions of the parties and the charge of the court.

10. **Appeal and Error § 35—**

    Where the charge of the court is not in the record, it will be presumed that the court correctly instructed the jury on every principle of law applicable to the facts.

**11. Claim and Delivery § 5—When property cannot be returned, plaintiff's sureties are liable for its value at time of wrongful seizure.**

Where in claim and delivery proceedings the pleadings, stipulations, and verdict establish that plaintiff's seizure of the property under his conditional sales contract was wrongful, that plaintiff could not return the property, and that the value of the property at the time of its seizure was in a designated sum, judgment against the sureties on plaintiff's undertaking for the stipulated value of the property at the time of seizure is not irregular, damages sustained by defendant as the result of the wrongful seizure and detention of the property being in excess of this amount.

APPEAL by J. B. Hunt, Jr., and Patty Penn Hunt, movants, from order of *Bickett, Resident Judge,* entered October 5, 1957, in Chambers. From WAKE.

Judge Bickett's order denied the motion made September 13, 1957, by the Hunts, sureties on plaintiff's $12,000 undertaking in claim and delivery proceedings, to vacate and set aside, insofar as it related to and affected them, the judgment signed by Judge Carr at June Civil Term, 1957, after a contested jury trial.

These events preceded the entry of said judgment:

On October 4, 1955, when plaintiff commenced this action, he obtained (1) an order extending the time for filing complaint, and (2) an order, in claim and delivery proceedings, for the seizure of property then in possession of defendant. In his affidavit, plaintiff set forth, *inter alia,* that he was the owner and entitled to the immediate possession of the property by virtue of a contract between plaintiff and defendant; that defendant wrongfully detained possession thereof; and that the value of the property was $6,000.

To obtain said order for the seizure of the property, plaintiff was required to give and did give a $12,000 undertaking, with J. B. Hunt, Jr., and Patty Penn Hunt as sureties, which, after recitals, contained these provisions, viz.:

"Now, therefore, and in consideration of the taking of said property, or any part thereof, by the Sheriff or other lawful officer of said county, by virtue of the said affidavit and the requisition thereon endorsed, we, the undersigned, hereby undertake and become bound to the defendant in the sum of TWELVE THOUSAND (12,000) DOLLARS, for the prosecution of this action by the said plaintiff, for the return of the property to the defendant, with damages for its deterioration and detention, if such return is adjudged and can be had, and, if for any cause return cannot be had, for the payment to the defendant of such sum as may be recovered against the plaintiff for the value of

the property at the time of the seizure, with interest thereon as damages for such seizure and detention."

The property was seized and taken from defendant on or about October 11, 1955; and, upon defendant's failure to file an undertaking for the return thereof to him, the sheriff delivered the property so seized to plaintiff.

The complaint was filed October 24, 1955; and the answer, which alleged a counterclaim, was filed December 16, 1955. The respective pleadings, in substance, contained these allegations, viz.:

Plaintiff alleged: "3. That on or about September 9, 1953 the plaintiff and defendant entered into a contract under the terms of which the plaintiff agreed: to give the defendant possession of a certain moveable building described as 'A Little Moore,' which was located at 2116 Hillsboro Street, Raleigh, North Carolina, and certain apparatus and equipment *described in said instrument* that was then located in said building: to give and convey to the defendant absolute title to said building and apparatus, whenever, *within five years and six and two-thirds months from date of said instrument,* the defendant should have paid, pursuant to the terms of said instrument the sum of $10,000, with payments due each month after date thereon in the sum $150.00 each and every month. And the defendant agreed under the terms of said instrument, that, in consideration of having possession as therein provided and the plaintiff's premises therein contained, he would pay the said money as aforesaid; that should he default and not make payments under the terms of said instrument, he would return the building, equipment and apparatus to the plaintiff *in the same condition as* the building, equipment and apparatus was in *when he took possession of them,* that is to say as of September 9th 1953." Except as to the words italicized, defendant admitted the said allegations of plaintiff's said paragraph 3.

Plaintiff alleged and defendant admitted: "4. That, pursuant to the terms of the written contract, the defendant took possession of said building and apparatus described, and continued to hold and enjoy possession of same from about the 9th day of September 1953 until on or about the 11th day of October 1955." (Note: The written contract is not in the record.)

Thereupon, plaintiff alleged that defendant was in default in respect of stipulated payments and that, "under the terms of said contract the property, fixtures and moveable building as enumerated in the contract reverts to the plaintiff." Plaintiff's prayer for relief was that he be adjudged the owner of said property and entitled to possession thereof; also, that he recover damages (1) on account of defendant's loss or removal

of certain equipment, and (2) on account of alleged deterioration of the building, fixtures and equipment while in defendant's possession.

Answering, defendant denied that he was in default or otherwise had breached the contract, averring that he had made all payments due under an amended schedule agreed upon and adopted by the parties.

As a counterclaim, defendant alleged that by reason of plaintiff's wrongful seizure and detention of said property, he had suffered substantial damages consisting of three items, (1) $5,000 damages, the reasonable cost and value of the improvements, repairs and additions defendant had made to said property, (2) $19,200 damages, "lost profits which could have been reasonably expected during the balance of the contract," and (3) $2,100 damages, the amount he had paid on account of the total agreed purchase price of $10,000.

Defendant's prayer for relief was that plaintiff recover nothing by his action; and "that the defendant have and recover of the plaintiff and his bondsmen" the said sums of $5,000, $19,200, and $2,100, respectively, to compensate him on account of his said alleged damages.

Plaintiff filed no reply to defendant's counterclaim.

At the trial by Judge Carr and a jury at June Civil Term, 1957, it was stipulated and agreed by counsel for plaintiff and defendant as follows:

"(1) That the property seized by the plaintiff cannot be returned to the defendant; (2) that the value of the property at the time of the seizure was $5422.89."

The issues submitted to and answered by the jury are set forth in Judge Carr's judgment, which judgment is as follows:

"This cause coming on to be heard before his Honor, Leo Carr, Judge presiding, and a jury, and the issues submitted to the jury having been answered as follows:

"1. Did the defendant breach the contract and lease, as alleged in the complaint? Answer: No.

"2. What damage, if any, has plaintiff sustained for equipment lost or mislaid by defendant? Answer:—

"3. Did the plaintiff breach the contract and lease, as alleged in the answer and counterclaim? Answer: Yes.

"4. What damage, if any, has defendant sustained by reason of plaintiff's taking and withholding the building and property? Answer: As to improvements on property—$3300.00; for refund for money paid $800.00; for loss of profits—$2890.00— this answer reduced by agreement of defendant to $1400.00.

"It is ORDERED, ADJUDGED AND DECREED that the plaintiff was not at the time of the commencement of this action, or at

any time since, entitled to possession of the personal property claimed by the plaintiff and seized by him in claim and delivery proceedings in this action; and that the taking possession of said property and every part thereof by the plaintiff was wrongful and unlawful;

"The parties plaintiff and defendant having stipulated that the plaintiff cannot return the property seized to the defendant and that the value of the property at the time of the seizure was $5422.89;

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the defendant have and recover, jointly and severally, from the plaintiff, C. J. Moore, Jr., and his bondsmen, J. B. Hunt, Jr., and Patty Penn Hunt, the sum of $5422.89.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant have and recover of the plaintiff, C. J. Moore, Jr., the sum of $77.11;

"IT IS FURTHER ORDERED that the plaintiff pay the costs of this action to be taxed by the Clerk."

Plaintiff excepted to said judgment, gave notice of appeal, was allowed fifty days to serve case on appeal, and appeal bond was fixed at $100. However, the appeal was not perfected.

On August 22, 1957, defendant caused execution to be issued against plaintiff and his sureties. Thereafter (date undisclosed), the Sheriff of Wake County served said execution on the sureties. On September 13, 1957, the said sureties, represented by counsel who had not appeared at said trial, filed their said motion, asserting therein that said judgment "was void, or irregular, or both void and irregular," as against the movants, to wit, the said sureties. Defendant in apt time replied to said motion. By agreement, the motion was heard by Judge Bickett, Resident Judge, in Chambers, on October 5, 1957.

Judge Bickett's order denied said motion. He made no findings of fact. There was no request that he do so.

Movants excepted to Judge Bickett's order and appealed. "The only exception is to the Order signed by *Bickett, J."*

*Smith, Leach, Anderson & Dorsett for J. B. Hunt, Jr., and Patty Penn Hunt, movants, appellants.*
*Harris, Poe & Cheshire for defendant, appellee.*

BOBBITT, J. The judgment attacked by appellants was entered by Judge Carr at June Civil Term, 1957, at the conclusion of a contested jury trial. It was based on the verdict, on the stipulations and on plaintiff's $12,000 undertaking, admittedly signed by the Hunts as sureties.

MOORE *v.* HUMPHREY.

Plaintiff's appeal was not perfected. If the judgment was *erroneous,* that is, based upon an erroneous application of legal principles to the established facts, it could be corrected only by this Court on appeal or on *certiorari. Mills v. Richardson,* 240 N.C. 187, 81 S.E. 2d 409, and authorities cited.

This appeal presents this question: Is the judgment, on the face of the record, void or irregular, insofar as it relates to and affects the sureties on plaintiff's $12,000 undertaking, as asserted by appellants? Judge Bickett's answer was "No." We agree.

The distinction between void, irregular and erroneous judgments was stated by *Merrimon, C.J.,* in *Carter v. Rountree,* 109 N.C. 29, 13 S.E. 716, as follows: "A void judgment is one that has merely semblance, without some essential element or elements, as when the Court purporting to render it has not jurisdiction. An irregular judgment is one entered contrary to the course of the Court—contrary to the method of procedure and practice under it allowed by law in some material respect; as if the Court gave judgment without the intervention of a jury in a case where the party complaining was entitled to a jury trial and did not waive his right to the same. *Vass v. Building Association,* 91 N.C. 55; *McKee v. Angel,* 90 N.C. 60. *An erroneous judgment is one rendered contrary to law. The latter cannot be attacked collaterally at all, but it must remain and have effect until by appeal to a Court of Errors it shall be reversed or modified.* An irregular judgment may ordinarily and generally be set aside by a motion for the purpose in the action. This is so because in such case the judgment was entered contrary to the course of the Court by inadvertence, mistake or the like. A void judgment is without life or force, and the Court will quash it on motion, or *ex mero motu.* Indeed, when it appears to be void, it may and will be ignored everywhere, and treated as a mere nullity." (Our Italics.) *Stafford v. Gallops,* 123 N.C. 19, 31 S.E. 265; *Moore v. Packer,* 174 N.C. 665, 94 S.E. 449; *Duffer v. Brunson,* 188 N.C. 789, 125 S.E. 619; *Dail v. Hawkins,* 211 N.C. 283, 189 S.E. 774; *Simms v. Sampson,* 221 N.C. 379, 20 S.E. 2d 554; *Mills v. Richardson, supra.* See McIntosh, N.C.P.&P., Secs. 651, 652 and 653.

The judgment was not void, for the court had jurisdiction of the subject matter and of the parties. As to the subject matter, there is no question or contention. As to the parties, it is well settled that sureties on the defendant's undertaking in claim and delivery proceedings, within the limits of their obligation, are parties of record. *Panel Co. v. Ipock,* 217 N.C. 375, 8 S.E. 2d 243; *Long v. Meares,* 196 N.C. 211, 145 S.E. 7; *Wallace v. Robinson,* 185 N.C. 530, 532, 117 S.E. 508, and cases

cited. Moreover, it is stated by *Hoke, J.* (later C. J.), and supported by the authorities he cited, "that their principal, the defendant in the case, is their duly constituted agent having power to bind them by compromise or adjustment of the matter, in any manner within the ordinary and reasonable purview and limitations of the action, and to have the same evidenced, secured, and enforced by judgment and final process in the cause." *Wallace v. Robinson, supra.*

The rule so established and declared as to sureties on defendant's undertaking applies equally to sureties on plaintiff's undertaking. *Council v. Averett,* 90 N.C. 168; *Insurance Co. v. Davis,* 74 N.C. 78.

Too, it is well settled that, upon determination of the action as between the principals, the prevailing party is entitled to a summary judgment against the sureties in accordance with the statute and the terms of the bond. *Trust Co. v. Hayes,* 191 N.C. 542, 132 S.E. 466; *Council v. Averett, supra; Harker v. Arendell,* 74 N.C. 85; *Insurance Co. v. Davis, supra.*

We consider now the several contentions advanced by appellants to support their position that the judgment is irregular, bearing in mind the definition of an irregular judgment quoted above.

Ordinarily a judgment drafted in accordance with the statute and the terms of the bond would provide, first, for the return of the property, with damages for its deterioration and detention. In *Trust Co. v. Hayes, supra,* and *McCormick v. Crotts,* 198 N.C. 664, 153 S.E. 152, cited by appellants, the judgment, on appeal, was held erroneous because it did not so provide. Here, the judgment was not erroneous in this respect; for, in view of the stipulation that the property could not be returned, such provision in the judgment was neither necessary nor appropriate. *Council v. Averett, supra.* The distinction is drawn in *Hall v. Tillman,* 103 N.C. 276, 9 S.E. 194. Also, see *Randolph v. McGowans,* 174 N.C. 203, 93 S.E. 730.

Where the property is returned, as in *Hall v. Tillman, supra,* the limit of the liability of the sureties on the bond is the amount of damages for the deterioration and detention of the property, and until the amount of such damages is determined by verdict or by agreement there is no basis for judgment against the sureties. See also, *Trust Co. v. Hayes, supra.* In *Hall v. Tillman, supra,* the sureties contended, as here, that the judgment rendered against them was irregular and void. However, it seems that the sureties appealed from the first judgment rendered *against them;* and whether the judgment was void, irregular or erroneous was not discussed in the opinion. It is

further noted that in *Trust Co. v. Hayes, supra,* the error was corrected on appeal from the first and only judgment.

Too, where the property cannot be returned, as in *Griffith v. Richmond,* 126 N.C. 377, 35 S.E. 620, the limit of the liability of the sureties on the undertaking is the value of the property at the time of the seizure, with interest thereon as damages for such seizure and detention; and, until the amount thereof is determined by verdict or by agreement, there is no basis for judgment against the sureties. In *Griffith v. Richmond, supra,* the error was corrected on appeal.

Where facts are stipulated, they are deemed established as fully as if determined by the verdict of a jury. *Church Conference v. Locklear,* 246 N.C. 349, 355, 98 S.E. 2d 453, and cases cited; *Edwards v. Raleigh,* 240 N.C. 137, 81 S.E. 2d 273, and cases cited. A stipulation is a judicial admission. As such, "It is binding in every sense, preventing the party who makes it from introducing evidence to dispute it, and relieving the opponent from the necessity of producing evidence to establish the admitted fact." Stansbury, North Carolina Evidence, Sec. 166.

Appellants contend: "The judgment, insofar as it purports to be based on the stipulation of counsel for plaintiff and counsel for defendant is void as to the makers of this motion for the reason that they did not expressly or by implication authorize plaintiff or plaintiff's counsel to sign said stipulation in their behalf and have not in any way ratified or approved his act." The cases cited in support of this statement are simply to the effect that "an attorney-at-law has no authority to compromise his client's case, or to consent to a judgment which will be binding on his client, founded upon such compromise, unless . . . specially authorized so to do by his client." *Morgan v. Hood, Comr. of Banks,* 211 N.C. 91, 189 S.E. 115; *Bath v. Norman,* 226 N.C. 502, 39 S.E. 2d 363. It is unnecessary to consider to what extent a stipulation relating to specified facts may be distinguished from a consent judgment fixing the ultimate rights and liabilities of the parties. Here there is no contention or suggestion that the counsel who represented plaintiff at the trial were not fully authorized by plaintiff to make and enter into the stipulations.

It is well settled that sureties in claim and delivery proceedings are bound by a consent judgment based on the principal's agreement. The rule is stated by *Smith, C. J.,* in *Council v. Averett, supra,* as follows: "The plaintiff prosecutes his own action, and the sureties assume responsibility for whatever may be legitimately and *bona fide* adjudged against their principal, who alone is the manager of his action, and by whose

conduct of it they must abide. His right to compromise in preference to hazarding the results of an inquiry into the value of the goods before a jury cannot be questioned, nor is a judgment thus rendered any less binding on the sureties. This the sureties agree to pay, and the summary judgment against them also was entirely correct and proper." *Robbins v. Killebrew,* 95 N.C. 19, 24; *McDonald v. McBryde,* 117 N.C. 125, 23 S.E. 103; *Nimocks v. Pope,* 117 N.C. 315, 23 S.E. 269; *Wallace v. Robinson, supra; Long v. Meares, supra. A fortiori,* the sureties are bound by stipulations of fact, made and entered into by plaintiff at the trial, relating to a particular phase of the case.

Even so, appellants assert that the facts established by the verdict and by the stipulations are insufficient to support the judgment. The contention is that "the vital and determinative issue of whether plaintiff was the owner and entitled to the possession of the property seized in the claim and delivery proceeding was not submitted to the jury or otherwise determined."

"A fact essential to the plaintiff's cause of action need not be proved if it is alleged in the complaint and admitted in the answer. (Citations) The admission is as effectual as if the fact admitted were found by a jury, and such fact is to be taken as true for all purposes connected with the trial. (Citations) This is so even though the admission is not introduced in evidence. (Citations)" *Wells v. Clayton,* 236 N.C. 102, 72 S.E. 2d 16.

The essential nature of the contract between plaintiff and defendant was that of conditional sale. Admittedly, the property was sold and delivered by plaintiff to defendant; and, unless defendant had defaulted on his payments on account of the purchase price, or otherwise had violated the terms of the contract, defendant was entitled to possession of the property under the terms of the contract alleged by plaintiff. The jury's answers to the first and third issues, findings that defendant had not breached the contract, as alleged by plaintiff, but that plaintiff had breached the contract, as alleged by defendant, established that defendant, in accordance with the terms of the contract, was legally entitled to possession of the property at the time of the seizure and that the seizure was wrongful.

We advert now to appellants' contention that the judgment does not follow the theory of the pleadings and of the verdict. "It is the rule with us . . . that a verdict may be given significance and correctly interpreted by reference to the pleadings, the facts in evidence, admissions of the parties, and the charge of the court." *Stacy,* C. J., in *Jernigan v. Jernigan,* 226 N.C. 204, 37 S.E. 2d 493; *Hutchins v. Davis,* 230 N.C. 67, 52 S.E. 2d

210; *Wynne v. Allen,* 245 N.C. 421, 96 S.E. 2d 422, and cases cited. Since Judge Carr's charge was not included in the record, it is presumed that the jury was instructed correctly on every principle of law applicable to the facts. *White v. Lacey,* 245 N.C. 364, 96 S.E. 2d 1; *Hatcher v. Clayton,* 242 N.C. 450, 88 S.E. 2d 104. Moreover, the evidence adduced at the trial was not included in the record. Hence, the record does not disclose the status of the property on October 24, 1955, when the complaint was filed, or on December 16, 1955, when defendant's pleading was filed.

It appears that the building, "A Little Moore," was constructed and equipped for use solely as a restaurant. It appears further that the seizure thereof destroyed defendant's ability to continue the operation of his restaurant therein. The damages he alleged, by way of counterclaim, did not arise out of any independent relationship between plaintiff and defendant; but the alleged damages were directly and proximately caused by plaintiff's wrongful seizure of the building.

Interesting questions, but no answers, are suggested by the record. Had plaintiff disposed of the property before the complaint or before the answer and counterclaim were filed? If so, had plaintiff sold it or leased it to a *bona fide* purchaser or lessee, for value, whose rights had priority over the rights of defendant under the contract? If so, any assertion by defendant of his right to recover actual possession would have been futile It is quite plain that Judge Carr had "a little more" information than the record before us discloses.

We cannot accept appellants' contention that the judgment does not follow the theory of the pleadings and of the verdict. Indeed, the damages assessed were those found to have been proximately caused by plaintiff's wrongful seizure and detention of the property; and, while less in amount, were the items of damages alleged by defendant.

There remains for consideration appellants' contention that defendant was not entitled to recover against the sureties because he did not seek to recover the property itself or in lieu thereof its value but alleged damages on account of plaintiff's breach of contract. In this connection, it must be kept in mind that the breach alleged by defendant consisted solely of plaintiff's wrongful seizure and detention of the property.

The property having been seized under claim and delivery and delivered to plaintiff, the plaintiff, together with his sureties, were required to account to defendant for its value at the time of seizure. *Credit Corp. v. Saunders,* 235 N.C. 369, 70 S.E. 2d 176, and cases cited. Here the judgment against the sureties was for such amount.

MOORE *v.* HUMPHREY.

The property was taken from defendant and delivered to plaintiff on or about October 11, 1955. Plaintiff was enabled to obtain such immediate possession solely because the appellants signed his $12,000 undertaking as sureties. Hence, the sureties enabled plaintiff wrongfully to seize the property and to dispose of it in some undisclosed manner. Under the explicit terms of the bond, if the property had been returned, the sureties were liable for damages for its deterioration and *detention.* It would seem anomalous if the sureties were allowed to escape liability for damages for its *detention* because plaintiff, in breach of his contract with defendant, disposed of the property for his own purposes and so could not return it.

It is noted that plaintiff's undertaking, signed by appellants, was drawn in the language of G.S. 1-475. Prior to the Act of 1885 (Laws of 1885, Ch. 50, Sec. 1), the statute required that the condition of plaintiff's undertaking be "for the prosecution of the action, for the return of the property to the defendant, if return thereof be adjudged, and for the payment to him of such sum as may, *for any cause,* be recovered against the plaintiff. . . ." (Our italics.) Code of 1883, Sec. 324. The said Act of 1885, by amendment of the prior statute, adopted the phraseology now embodied in G.S. 1-475. Apparently, the purpose of the Act of 1885 was to limit the liability of the sureties to the value of the property at the time of seizure. It is also noted that G.S. 1-230, which antedates the Act of 1885, provides in pertinent part: "If the property has been delivered to the plaintiff, and the defendant claims a return thereof, judgment for the defendant may be for a return of the property, or for the value thereof in case a return cannot be had, *and damages for taking and withholding the same."* (Our italics.) The foregoing would seem to support the view that, if the property is wrongfully seized and detained by plaintiff and cannot be returned, the liability of the sureties is for such damages as defendant may recover from plaintiff on account of such wrongful conduct, *not exceeding the value of the property.*

However, we need not resolve the questions of law suggested in the two preceding paragraphs. If Judge Carr erred in his application of the law to the facts as established by the verdict and by the stipulations, his judgment was erroneous. In such case, it could be corrected only by this Court on appeal from the judgment and not by motion in the cause interposed subsequent to adjournment of the trial term. *Mills v. Richardson, supra; Burrell v. Transfer Co.,* 244 N.C. 662, 94 S.E. 2d 829.

In their motion, appellants assert that they were advised by plaintiff that he had given notice of appeal from the judgment and was taking steps to perfect the appeal. Suffice to say, the

appeal was not perfected. Appellants saw fit to rely upon plaintiff, their principal, by becoming sureties for him and thereafter by committing to him the management of the trial and all subsequent proceedings. We are not concerned on this appeal with the status of affairs as between the sureties and the plaintiff. See *McDonald v. McBryde, supra.*

It is noteworthy that the cases cited by appellants deal largely with the correction of erroneous judgments on appeal therefrom. The facts in *Simms v. Sampson, supra,* a case involving an irregular judgment, readily distinguish that decision from the present case.

Since we hold the judgment is not irregular, it is unnecessary to consider whether appellants acted with reasonable promptness and have a meritorious defense, prerequisites to setting aside an irregular judgment. *Simms v. Sampson, supra; Duffer v. Brunson, supra.*

The order of Judge Bickett is affirmed.

Affirmed.